THE CITY OF DETROIT v. THE FORT WAYNE & ELM-
WOOD RAILWAY COMPANY.

*Municipal corporations—Street railways—Alteration of tracks—
Power of council.*

1. A city council required a street-railway company to remove so
much of the ties upon 2,400 feet of its road as were outside of the
stringers on which the rails rested, so that a concrete foundation
might be used in paving the street in which the track was laid,
and assigned as a reason that, in the judgment of the council and
board of public works of the city, if such removal was not made
the passage of the cars would, by their vibration, injure the con-
crete foundation. A compliance with the requirement necessi-
tated the adoption of some other form of bracket or mode of stay-
ing the stringers upon the portion of road affected. It was
conceded that other brackets and other modes of staying stringers
were used and employed in the city; in view of which concession
the requirement is held reasonable, and a *mandamus* is granted
to enforce it.

2. The objections that the like requirement was not made of other
street-railway companies, and that it was made by resolution,
instead of by ordinance, and that a compliance therewith would
involve large expense to the company, are held untenable.

3. The following propositions are summarized from the opinion of
Mr. Justice McGRATH:

*a*—The right of public supervision and control of highways
results from the power and duty of providing and preserving
them.

*b*—The permission given to a street-railway company to use a
street is in subordination to the general power of the municipality
over its streets.

*c*—A city is under no obligation to conform its treatment of its
streets to the construction of the road-bed of a street-railway, but
the railway company must conform such construction to such
reasonable regulations as are made by the city in the exercise of
its powers respecting the use, control, regulation, and improve-
ment of its streets.

*d*—Street railways occupy public streets subject to their use by
the public, and to such burdens as may be made necessary by
reason of their improvement, and to such changes in the con-

struction of their road-beds as improved and changed conditions may demand.

e—How. Stat. § 3554, empowers a city council to prescribe such rules and regulations regarding street railways as may be required for the grading and paving of the streets occupied by them, and in the exercise of the power thus conferred, as well as that conferred by the charter respecting the determination of the character of all improvements, the council has the undoubted authority to determine what is necessary or required, and whether any particular method of construction of their road-ways interferes with the durability or preservation of a proposed pavement, and to prescribe such reasonable changes in the mode of construction as, in the judgment of the council, will preserve and protect the proposed improvement.

*Mandamus.*  Argued February 9, 1892.  Granted March 18, 1892.

Relator applied for *mandamus* to compel the respondent to observe the order of the common council for the removal of the projecting ends of the ties upon which its tracks are laid over 2,400 feet of its road. The facts are stated in the opinion.

*J. J. Speed,* for relator.

*E. F. Conely,* for respondent.

McGRATH, J.   This is an application for *mandamus* to compel the respondent, a street-railway company, to observe the order of the common council of the city of Detroit as to the removal of the projecting ends of the ties upon which its tracks are laid, on Champlain street, between Rivard and Randolph streets.

The petition sets forth that the city has let a contract for the repavement of Champlain street, said pavement to rest upon a concrete foundation; that the tracks of said railway are laid upon wooden ties, which extend a distance of six and one-half inches into the street on each side beyond the line of its track ; that upon these ties are

placed stringers about eight inches square; that the stringers are kept in place by iron brackets, which are placed outside of the stringers, and fastened to both tie and stringer; that the ties are laid upon sand and are tamped with sand and gravel; that the other street railways in said city (except the road on Fort street east, which is a new road) constructed their railways with a bracket which extends outside of the stringer only one inch, and the tie is cut off so it does not extend beyond the stringer more than that distance; that the bracket of the Ft. Wayne & Elmwood Railway Company extends outside of the stringer a distance of about three inches; that on the Fort Street East Railway, owned and operated by respondent, the bracket does not extend outside the stringer at all, and the stringers are tied together by an iron rod, and that this is an appropriate and suitable method of construction, and one which is essential where concrete is used as a foundation for pavement; that, if the construction adopted by the Ft. Wayne & Elmwood Railway is maintained, the water passing through the cobble-stone pavement, which is laid between the rails, will pass down to and settle under the ties, making the foundation soft, and the constant vibration of the ties and stringers caused by the cars passing over the rails will break the bond of the concrete, which is laid around and over the projecting ties, and injure or destroy the pavement above and about it.

That at a session of the common council held on the 24th of November, 1891, said council adopted a resolution as follows:

"*Resolved*, that the Fort Wayne & Elmwood Street-Railway Company be, and they are hereby, directed to cause to be removed so much of the railway ties of their railroad on Champlain street, between Randolph and Rivard street, as are outside of the stringers on which their rails are placed, in order that the street may be paved with a concrete foundation; it being the judgment

of this council and the board of public works that, if the ties are not removed, the passage of the cars will, by their vibration, injure the concrete.

"The city clerk will transmit a copy of this resolution to the Ft. Wayne & Elmwood Street-Railway Company."

That the respondent, through its attorney, in a communication addressed to the common council, declined to comply with the direction of the council.

The respondent sets up that, in pursuance and under the authority of the ordinances set forth, the respondent constructed, in the summer of 1890, the portion of its street railway on Champlain street, between Randolph street and Mt. Elliott avenue, under the supervision of and in the manner approved by the then board of public works of the city of Detroit, and in every respect in full compliance with the terms, conditions, and agreements of the ordinances above mentioned; that, during the year 1891, the common council directed the repaving of Champlain street from Randolph street to Rivard street with brick, on a sort of concrete foundation, similar to the pavement on Griswold street in front of the United States post-office, and at the crossing of the respondent's street railway on said street; that during the same year the common council directed the paving of Champlain street from Elmwood avenue to Mt. Elliott avenue with like pavement; that, in preparing for such paving and repaving, the board of public works fixed a grade on Champlain street whereby the street was raised in some places, and lowered in others, thereby necessitating a change in the existing grade of the respondent's street railway; that thereupon the respondent was notified by the board of public works to change the grade of its street railway so as to conform to the grade established by said board; that the respondent, in compliance with the demand of said board, proceeded to change the grade

of its street railway on Champlain street, and on the portion to be repaved has all of the grade changed as and so far as ordered.

That, in order to have a suitable and secure foundation, it is absolutely necessary that the stringers should be held firmly in place, without the possibility of spreading and with the least possibility of vibration; that to accomplish this result or end, the stringer rests in strong iron brackets securely fastened to the ties below, thus making a solid foundation; that the stability and solidity of the road depends almost, if not wholly, upon the strength and security with which the bracket is fastened to the tie below, and in practical experience it has been found necessary to have the end of the tie project beyond the outside of the stringer on which the rail is fastened sufficiently to admit of the fastening of the bracket to the tie by means of a spike driven through the outside foot of the bracket; that other forms of brackets are in use in the city of Detroit; that its form of bracket is of an approved pattern for horse railways; that it is an essential part of the foundation, and, if the respondent is required to make the change demanded, it may be compelled to change the foundation of its street railway throughout the entire length, thereby subjecting it to great unnecessary expense and great inconvenience, if not irreparable loss and damage in weakening the foundation of its railway, as the stringers cannot be properly braced except in the manner above described, or by an equivalent bracket; that the feet of the bracket are its lateral support, and are about nine inches below the surface, thus giving ample room for paving over them; that the ends of the ties project beyond the toe of the bracket from two to four inches; that the ties on the portion of the street railway in question are of the usual length, and are such as are in common use on street railways; that so much of the

tie as projects beyond the toe of the bracket the respondent has offered to saw off at its own expense, and, on the portion of Champlain street newly paved, this course has been pursued under an agreement between the board of public works and respondent; that the common council of the city of Detroit has never adopted an ordinance governing or regulating the matters in question, nor has it in any other manner established any uniform rule governing, regulating, or treating all persons affected alike.

The respondent denies that the other street railways in the city of Detroit constructed their railways (with the exception of Fort street east) with a bracket which extends outside of the stringer only one inch, but avers that the fact is that all of the brackets above described are in use on the various street railways of the city; that there is another form of bracket in use which has no projecting foot beyond the outside of the brace, but this form of bracket requires a spike through it midway between its two braces, or through the bottom and center of it, so to speak, which spike is completely covered up by the stringer when in position; that the result of this is that, when a tie becomes decayed and should therefore be removed, that portion of the road and foundation has to be completely torn up in order to replace the tie, whereas, with the present bracket, it is only necessary to slide it along the stringer by tapping it, thus uncovering the tie and admitting of its removal without a serious disturbance of the foundation of the road; that this bracket, however, is not nearly as good as any of the other brackets above described, and for a heavier track and a different motive power would be insufficient.

The respondent denies that the concrete in the pavement before mentioned will be injured by the vibration of the ties as claimed, and avers that the danger thereof

is imaginary. The respondent alleges and charges the truth to be that, if the pavement is properly constructed, there will be no vibration from any such cause, and that the concrete will be entirely secure from disturbance in such manner. The respondent denies that, if the construction adopted by it is maintained, the water passing through the cobble-stone pavement will pass down to and settle under the ties, thereby making the foundation soft.

The respondent therefore submits:

1. That the board of public works had no authority to order the respondent to make the changes demanded.

2. That the common council has no authority to make such demand.

3. That the resolution of the common council was without legal force.

4. That, if the common council has any authority in the premises, the same can be exerted only through an appropriate exercise of its legislative power by ordinance, and that such ordinance, if it can be lawfully adopted, must be reasonable and uniform.

The following are extracts from the ordinances granting to respondent its franchise, and governing its operation:

"The track of said railway shall be laid of such rails as are now laid in Woodward avenue, and as shall. least obstruct the free passage of vehicles or carriages over the same; and the upper surface of the rails shall be laid flush with the surface of the streets, and shall conform to the grades thereof as now established, or as they shall, from time to time, be established or altered; and, in case of grading, paving, or otherwise, if it be necessary to relay said rails, the same shall be done at the expense of the grantees; and in all streets, or parts of streets, which are not paved, the rails shall be laid in such manner as shall least interfere with the public travel thereon, and as shall be authorized and approved by the city engineer."

"It is hereby reserved to the common council of the city of Detroit the right to make such further rules,

orders, or regulations as may, from time to time, be deemed necessary to protect the interest, safety, welfare, or accommodation of the public in relation to said railways."

"The rails of said street railway shall be laid on a foundation equal to that of Woodward avenue or any other first-class railroad."

"On and after the date upon which this ordinance shall take effect, whenever any of the streets through which the line of said railway is or may be laid shall be hereafter ordered to be paved, repaved, or repaired, said company shall furnish all material and bear the entire expense of excavating, grading, paving, repaving, and repairing that portion of the street which lies between the outer rails of their tracks, including the space between all double tracks and switches, and said company shall at all times keep the same clear and in good order and condition; but said company shall have the right, for the purposes of paving, repaving, or repairing said space, to use either cedar blocks or cobble-stone, or some other similar, durable, and proper material, such latter material to be subject to the approval of the common council, and all cobble-stones or other material now constituting the roadway between said tracks of the company shall belong to said company, while used for the purposes of paving, repaving, and repairing, in the place or places where such cobble-stones or other material are now or hereafter may be for the first time laid or placed."

The street-railway act provides (How. Stat. § 3554) that—

"The common council or other corporate authorities of the city or village in which any street railway shall be located may, from time to time, by ordinance or otherwise, establish and prescribe such rules and regulations in regard to said railway as may be required for the grading, paving, and repairing the street, and the construction of sewers, drains, reservoirs, and crossings, and the laying of gas and water pipes upon, in, and along the streets traversed by such road, and to prevent obstructions thereon."

Highways are under public authority. Municipalities

are by statute made liable for damages resulting from their defective condition.  As is said:

" The right of public supervision and control of highways results from the power and duty of providing and preserving them."

The charter of the city of Detroit commits the regulation, supervision, and control of its streets to the common council.  It empowers the council to improve the same and to determine the nature and details of such improvement.  It gives to the common council the power to control, prescribe, and regulate the manner in which the streets shall be used and enjoyed.  These powers are held in trust for the public benefit.  They cannot be surrendered or delegated to private parties.  All franchises granted or contracts made with reference to the use of streets must be made, not only with due regard to their lawful and proper use by others, but subject to the exercise by the municipality of the powers referred to.

The permission given respondent to use this street is in subordination to the general power of the municipality over its streets.  The city is not under obligation to conform its treatment of its streets to the construction of respondent's road-bed, but, on the contrary, respondent must conform the construction of its road-bed to such reasonable regulations as are made by the municipality in the reasonable exercise of its powers respecting the use, control, regulation, and improvement of its streets.  Street railways occupy public streets subject to the use of such streets by the public, subject to such burdens as may be made necessary by reason of the improvement of such streets, and subject to such changes in the construction of road-beds as improved and changed conditions may demand.  The statute referred to empowers the council to prescribe such rules and

regulations regarding such railways as may be required for the grading and paving of the streets occupied by them. In the exercise of the power conferred by this statute, as well as the power conferred by the charter respecting the determination of the character of all improvements, the council have the undoubted authority to determine what is necessary or required, and whether any particular method of construction of respondent's road-way interferes with the durability or preservation of the proposed pavement, and to prescribe such reasonable and practicable changes in the mode of construction as, in their judgment, will preserve and protect the proposed improvement.

In the recent case of *Philadelphia v. Railway Co.*, 22 Atl. Rep. 695, the supreme court of Pennsylvania says:

"By whom is the necessity for repairing or repaving, etc., to be determined? Certainly not by the company itself, but by the municipal authorities. As a general rule, it is their special province to determine when repaving is needed, and how it shall be done, whether with the same kind of material as before, or with a different and better material. It was never intended *to transfer the duty of determining these matters, or either of them, from the municipal authorities to any one else. The proposition that, because cobble-stone was the kind of pavement ordinarily in use when defendant company was chartered, it is, in no event, bound to repave with any other and more expensive kind of material, etc., is wholly untenable. It cannot be entertained for a moment. It was never contemplated that the railway company would continue to exist and perform its corporate functions in a cobble-stone age. It was called into being with the view of progress. The duties specified in its charter were imposed with reference to the changes and improved methods of street paving which experience might sanction as superior to, and more economical than, old methods. In other words, the company is bound to keep pace with the progress of the age, in which it continues to exercise its corporate functions. The city authorities have just as much right to require it to repave, at its

own expense, with a new, better, and more expensive kind of pavement, as they have to cause other streets to be repaved, in like manner, at the public expense."

In the present case the common council and board of public works have determined that the vibration of the projecting ties, which are laid upon a sand foundation, will break the bond of the concrete if laid over and around the projecting ends of the ties, which it must be if the projecting ties are allowed to remain, and thus the pavement will be destroyed. This conclusion does not appear to be unreasonable, but, on the contrary, the result which the council desires to protect the pavement against would seem to be most natural. The demand of the council necessitates the adoption, upon this section of respondent's road, of some other form of bracket or mode of staying the stringers. It is conceded that other brackets are used in the same city, and other methods are employed, which obviate the difficulty complained of. In view of this concession, the requirement of the common council is not an unreasonable one.

The objection that this demand has not been made of all roads, and that it is made by resolution, instead of by ordinance, is untenable. The fact that it is made of respondent as to 2,400 feet of its road, and not as to its entire length of 15 miles, is a sufficient reason why it should rest in resolution, rather than in ordinance. The requirement is unnecessary when the street occupied is not paved, and may not be necessary as to all kinds of pavement. At all events, the record shows that the changed construction is not insisted upon where certain kinds of pavement are to be laid. An ordinance could but define the power of the council, or empower the board of public works to make the requirement.

The objection that compliance therewith involves large expense to respondent cannot avail. The statute imposes

the duty of observance of such regulations as may be prescribed by the council, and the burdensome character of that duty does not affect the obligation to perform it.

The writ must issue as prayed, with costs to relator.

The other Justices concurred.