## 136    SUPREME COURT OF HAWAII.

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

## HONOLULU RAPID TRANSIT & LAND COMPANY *v.* THE TERRITORY OF HAWAII AND MARSTON CAMPBELL, SUPERINTENDENT OF PUBLIC WORKS.

SUBMISSION UPON AGREED STATEMENT OF FACTS.

ARGUED MAY 13, 1912.                    DECIDED MAY 24, 1912.

ROBERTSON, C. J. PERRY AND DE BOLT, JJ.

STREET RAILROADS—*obligation to pave street.*

The duty imposed on the street railway company by section 838, R. L., to pave or macadamize the portions of the streets occupied by its tracks whenever the other portions of the streets are paved or macadamized is not limited to original construction, but requires the company to lay a pavement corresponding with a new pavement laid down by the proper governmental authority though the portion of the street occupied by the company had previously been macadamized.

SAME—*obligation to conform to street improvements.*

Under section 864, R. L., the duty is imposed on the street railway company to pave its portion of the street so as to conform to a new pavement laid down on the rest of the street by the city and county of Honolulu, whether the duty is enjoined by section 838, R. L., or not. The word "Territory" as used in section 864, is equivalent to "Government" and includes street improvements made by the municipality.

SAME—*discretion of superintendent of public works as to directing kind of pavement.*

The obligation of the street railway company as to paving is defined and fixed by the franchise act. The superintendent of public works has no discretion to authorize or direct the laying of a pavement of a kind different from that used by the government.

SAME—*necessity for repaving streets.*

The necessity for repaving the streets is to be determined by the governmental authorities having charge of such work. And in prescribing the kind of pavement to be used the authorities are not limited to that which was in ordinary use at the time of the granting of the franchise.

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

SAME—*reasonableness of requirement to repave street.*

> Notice to the railway company that it shall conform to a patented bitulithic pavement laid upon a concrete foundation put down on a certain section of King street, in Honolulu, by the municipal authorities does not constitute an unreasonable requirement, it not appearing that the cost would be excessive or that the owner of the patent contemplated exacting conditions other than payment of the price of the material and the cost of laying the pavement, and no claim being made that the pavement was not an approved one, or that the action of the municipality in laying it was in any way improper or inappropriate, though nearly one-half of the life of the franchise has expired, and at the end of the term of the franchise the ties could be taken up only with much difficulty.

OPINION OF THE COURT BY ROBERTSON, C. J.

The facts agreed upon by the parties are as follows:

"The Honolulu Rapid Transit & Land Company is a corporation, duly organized and existing under the laws of the Territory of Hawaii and incorporated under the provisions of the Act of July 7, A. D. 1898, to hold, and is holding and exercising, the franchise and privileges granted in said Act, and has constructed and is maintaining and operating a street railway in Honolulu, in said Territory of Hawaii; said franchise having been ratified subject to the approval of the President under the provisions of the Organic Act creating the Territory of Hawaii, and said franchise, incorporation, and all acts done and proceedings taken in the premises having been duly approved by the President of the United States on the 25th day of June, 1900, in accordance with Section 73 of said Organic Act.

"That prior to the 15th day of February, 1911, the Honolulu Rapid Transit & Land Company had been maintaining and operating upon that portion of King Street between the bridge over the Nuuanu Stream and Nuuanu Street, in said City and County of Honolulu, a distance of about 1212 feet, a single track railway, and, at said time, said portion of King Street had been improved and macadamized, and, in accordance with Section 4, paragraph 5, of said Act of July 7, 1898, the said corporation had macadamized the space between its tracks and

138    SUPREME COURT OF HAWAII.

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

for one foot outside of its rails upon said portion of said street, in conformity with law.

"That since said 15th day of February, 1911, the said Company, having acquired the lawful right so to do, has operated and is now operating a double track upon said portion of King Street, which it constructed, and has resurfaced with macadam the entire space between the outside rails of said double track and for one foot outside of said outside rails corresponding with the macadamizing of the remaining portion of said street, said additional track having been constructed upon a location approved, in writing, by the Superintendent of Public Works.

"That thereafter, to wit, on or about the 8th day of December, 1911, by proceedings duly had in accordance with law, the City and County of Honolulu entered into a contract with the Bitulithic Paving & Concrete Company, Limited, to pave with bitulithic pavement of two inches in depth upon a concrete foundation, that portion of King Street between the Bridge over the Nuuanu Stream and Nuuanu Street, said improvement being of a permanent and lasting character, the only portion of the same requiring replacement being about two inches of surfacing which the Bitulithic Paving & Concrete Company, Limited, guaranteed to keep in repair for the period of five years.

"That the said bitulithic pavement is a patented article of which the Bitulithic Paving & Concrete Company, Limited, have the exclusive control and the right to use the same within the Territory of Hawaii, and will have such exclusive control and the right to use the same for the life of the patent, which is for about ten years.

"That upon the 5th day of March, 1912, the said Bitulithic Paving & Concrete Company, Limited, completed the paving of said street in accordance with the above mentioned contract.

"That after said contract was entered into, to wit, on or about the 6th day of January, 1912, the said Superintendent of Public Works gave notice to the Honolulu Rapid Transit & Land Company (a copy of which is hereto annexed and made a part hereof) to improve its portion of the street with the same material as specified in said contract between the City and County of Honolulu and the Bitulithic Paving & Concrete Company, Limited, except that there shall be on each side of said rails wooden or stone blocks.

"That the rails of the said Honolulu Rapid Transit & Land Company on said portion of King street have a depth of seven inches when set in the street, and that the life of such a rail is about ten to fourteen years; and that the rails in the old track on said portion of King Street have on the average about twenty-five per cent of the life of the rails yet remaining.

"That in paving with bitulithic or other kinds of paving requiring a permanent concrete base or foundation, it is necessary that the concrete base should (except where stone or wooden blocks are laid on each side of the rails) extend up to within two inches of the top of the rail; that the method prescribed in the notice of the Superintendent of Public Works is one of the adopted methods of construction used by street railways where bitulithic, asphaltic, bituminous, tarvia or other similar pavements are used; that the purpose of the wooden or stone blocks on each side of the rail, and, in this instance, of a depth of not less than six inches, is to allow the rail to be renewed or removed without damage to the balance of the pavement.

"That another adopted method of construction by street railroads, where similar pavements are used, is the use of wooden or stone blocks for the entire space between the rails and for one foot on each side of the rails for a depth substantially equal to the rail and with only one inch of cement mortar over the ties.

"That the Honolulu Rapid Transit & Land Company requested the Superintendent of Public Works to allow them, in case they are compelled to pave as required, to use the latter form.

"That under the first above mentioned method of construction, the use of wooden or stone blocks next to the rail is for the purpose of dissipating vibration, of permitting the renewal of the rails without damage to the portion of the pavement constructed by the City and County, and that under the last above mentioned method of construction, the use of such blocks for the entire space between the rails is for the same purposes, and the further and main purpose of allowing the renewal of the ties without destroying the concrete and bitulithic pavement between the rails that would be necessitated if the first above method of construction should be adopted.

"That the cost of the improvement under either of said methods would be about the sum of Nine Thousand Dollars

($9000) and under either of said methods, if adopted, it would be the part of good, sound engineering judgment for the Honolulu ·Rapid Transit & Land Company to replace with new ties and rails such ties and rails as the life of which is well spent."

The notice served on the company by the superintendent of public works was as follows:

"Jan. 6, 1912.

"Gentlemen:

The City and County of Honolulu has let a contract for the paving of King Street, from River Street to Nuuanu Avenue; and you are hereby notified, in accordance with the law applicable thereto, as set forth in Chapter 66 of the Revised Laws of Hawaii, to pave the portion of the street occupied by your tracks, and one foot outside of the outside rail, between River Street and Nuuanu Avenue, with the same materials as specified in that certain contract made by the City and County of Honolulu for the paving of King Street, from River Street to Nuuanu Avenue, except that there shall be on each side of each rail throughout its length rows of either ohia or stone blocks not to exceed one foot in width. The blocks to be grouted in position with an approved grout, in accordance with Standard Plan for this type of construction on file in the office of the Superintendent of Public Works, a copy of which is attached hereto.

"Very truly yours,

MARSTON CAMPBELL,

Superintendent of Public Works.

"Honolulu Rapid Transit & Land Co.

"Honolulu."

The following questions have arisen and are now submitted for adjudication:

"(1)    Does the action of the municipal authorities of the City and County of Honolulu in the premises create any obligation on the part of the Honolulu Rapid Transit & Land Company which can be enforced under Section 29 of said Act (Section 838 Revised Laws of Hawaii)?

"(2)    Has the Superintendent of Public Works discretion as to the kind of paving he shall direct the Honolulu Rapid Transit & Land Company to make in the premises? May he direct that other kinds of pavement than used by the City and

MAY, 1912. 141

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

County of Honolulu on said street, be laid by the Honolulu Rapid Transit and Land Company?

"(3) Has the Honolulu Rapid Transit & Land Company, by macadamizing as set forth, the portion of King Street referred to, complied with the obligation of its charter and the law to pave or macadamize as set forth in Section 4 of the Act of July 7, 1898 (Section 838 Revised Laws of Hawaii) so as to free it of any or all obligation to pave said portion of said street in the manner directed by the Superintendent of Public Works or in the manner in which the remaining portion of said street has been paved by the City and County of Honolulu?

"(4) Is it a reasonable requirement under the provisions of its Charter and the law that the Honolulu Rapid Transit & Land Company should be required to lay a paving of the kind aforesaid under the conditions herein set forth?

"(5) Is it a reasonable requirement, under the provisions of its Charter and the law that the Honolulu Rapid Transit & Land Company should be required to lay a paving of a patented material, which they are obliged to maintain, and the furnishing of which is entirely under the control of the owner of the patent?

"(6) In view of the foregoing facts and the law as set forth in Chapter 66 of the Revised Laws and more particularly in Sections 838 and 864 of said Chapter, is the Honolulu Rapid Transit & Land Company obliged to pave the entire space between the outside rails of its said tracks on King Street between the bridge over the Nuuanu Stream and Nuuanu Street, so that such paving shall be flush with said street and correspond in material with the paving of the remaining portion of said street?

"(7) In view of said facts and law, is the Honolulu Rapid Transit & Land Company obliged to comply with said notice of said Superintendent of Public Works?"

On behalf of the railway company it is contended that as the franchise act is a contract which cannot be changed without the consent of the company, and as all powers in reference to street improvements were vested by the statute in the superintendent of public works, and the Territory, a new obligation to comply with the action of the municipal authorities cannot be

142      SUPREME COURT OF HAWAII.

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

imposed; that whatever discretion the superintendent of public works had before the passage of the municipal act (Act 118, Laws of 1907) he has still, and he is not compelled to direct the company to lay a pavement of the kind used by the municipality; that the company, having macadamized that portion of the street occupied by it at a time when the rest of the street was macadamized, the obligation in reference to original construction contained in section 838 of the Revised Laws was fulfilled, and there was no obligation on the company to repave; that the provision contained in section 864 of the Revised Laws in regard to conforming to street improvements refers only to improvements made by the Territory, and does not apply to an improvement by the municipality; that the requirement to put down a pavement of the permanent and expensive character referred to is unreasonable because nearly one-half of the life of the franchise has run, and the character of the required pavement is such as to prevent the removal, at the end of the franchise, of the ties; and that the requirement is unreasonable and illegal because it compels the company to use a patented article.

Paragraph 9 of section 838, R. L., provides that "whenever the streets are paved or macadamized" the company shall pave or macadamize the entire space between its tracks, or between the outside rails of double tracks if more than one track be laid, and for one foot outside of the outer rails, and such paving or macadamizing shall be flush with the streets, and correspond with the paving or macadamizing of the remaining portion of the street. Also that the company shall keep its tracks, and its portions of all the streets, "in good repair," such repair when made to be approved by the superintendent of public works.

Paragraph 3 of section 864, R. L., provides that the company's tracks shall conform to the grades of the streets on which they are laid down, and that "in all cases of street improvements by the Territory," the company "shall conform to all such improvements, in the kind of pavement and the manner

MAY, 1912. 143

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

of laying the same, as directed by the superintendent of public works."

The duty imposed upon the company by section 838 is not only to keep the portion of the streets occupied by its tracks in good repair, but also to pave or macadamize whenever the streets shall be paved or macadamized. "Whenever" means "at whatever time," and the provision would seem to require the company to renew its part of the street when and as often as the rest of the street shall be renewed. The requirement that the paving done by the company shall correspond with that of the remaining portion of the street tends to strengthen this view. The evident purpose of the provision was to secure a uniformity in street construction which could be attained only by compelling the railway company to follow the methods that may be adopted from time to time by the governmental authorities. The duty to pave or macadamize must, therefore, be held to include the duty to repave or re-macadamize. This construction has been given to similar provisions by courts in other jurisdictions. *Lansing* v. *Lansing City El. Ry. Co.,* 109 Mich. 123; *West Chester* v. *West Chester Street Ry. Co.,* 203 Pa. St. 201; *Columbus* v. *Street Railroad Co.,* 45 Oh. St. 98. In *Conway* v. *Rochester,* cited with approval in *Rochester Ry. Co.* v. *Rochester,* 205 U. S. 245, the duty to "have and keep in permanent repair" whenever required by the proper local authorities and under their supervision, was held to include the duty to repave when ordered so to do.

The necessity for repaving the streets is to be determined by the governmental authorities having charge of such work. And in prescribing the kind of pavement to be used the authorities are not limited to that which was in ordinary use at the time of the granting of the franchise. The duty to repave is imposed with reference to probable changes and improved methods of street construction which the progress of the age may develop. *Philadelphia* v. *Ridge Ave. P. R. Co.,* 143 Pa. St. 444; *Detroit* v. *Fort Wayne etc. Ry. Co.,* 90 Mich. 646.

The Territory expressly reserved the right to grade, sewer, pave, macadamize or otherwise improve, alter or repair the streets, in the franchise act. R. L. Sec. 864, Par. 2.

If the view we have taken of section 838 is sound the requirement of section 864, that the company shall conform in the kind of pavement and the manner of laying the same in all cases of street improvements by the Territory, is probably to be regarded as repetitious and unnecessary. But if the view of counsel for the railway company that section 838 does not require the company to repave after it has once paved or macadamized is correct, the duty to repave is to be found, if at all, only in section 864. We hold that the duty to repave, whether enjoined by section 838 or not, is imposed by section 864. The notice of the superintendent of public works that the company should conform to the street improvement made by the municipality did not constitute an attempt to impose upon the company an obligation which it did not assume when it accepted the franchise. In the original act (Act 69, Laws of 1898, Sec. 29) the word used in the section which is now section 864 of the Revised Laws, was "Government;" the provision being "And in all cases of street improvements by the Government" etc. In the revision of 1905 the word "Territory" was substituted for "Government." But we think there was no intention to alter the general sense of the provision. At the time the Revised Laws were enacted there were no municipal subdivisions in this Territory. The word "Territory" was used broadly and not in contradistinction to "county" or "city." Under section 91 of the Organic Act the Territory has the possession, use and control of the public highways, and under section 23 of the municipal act the city and county has the use of the streets of Honolulu "for any and every purpose." The street may be improved by the superintendent of public works out of funds appropriated from the territorial treasury, or under the direction of the board of supervisors out of funds

MAY, 1912. 145

Honolulu Rapid Transit & Land Co. v. Territory, 21 Haw. 136.

drawn from the municipal treasury. Improvements made by the municipality, which, after all, is but an arm or instrumentality of the government of the Territory, are within the purview and intent of section 864. If the demand that the company should repave the portion of King street referred to so as to conform to the new pavement laid by the municipality could not be made under section 838, on the theory that that section relates only to original construction, it is valid and legal under section 864, which relates specifically to new improvements.

The franchise act, as already pointed out, provides that the pavement required to be laid by the company shall correspond (Sec. 838) or conform (Sec. 864) to the pavement laid down by the government. The act gives no discretion to the superintendent of public works to authorize or direct the laying of a different kind of pavement. The company's obligation is defined and fixed by the statute, and the street having been improved by the laying of a new pavement of a certain kind, the company cannot be authorized or compelled to pave its part with another kind. *Shamokin* v. *Shamokin Street Ry. Co.*, 178 Pa. St. 128. We do not regard the notice sent to the company that wooden or stone blocks be laid on each side of the rails for a space not exceeding one foot as a material departure from the statutory requirement. Good and sufficient reasons appear in the statement of facts for the use of such blocks. The act requires and the notice, likewise, should require of the company that the pavement on the part of the street which it is bound to pave shall, in kind and manner of laying, be in substantial conformity with that used on the rest of the street. We hold that the notice sent to the company by the superintendent of public works was in compliance with the duty of that official in the premises.

Notwithstanding what we have said in regard to the company's obligation to conform its pavements to those laid down by governmental authority, the provisions of the franchise act, as contended by counsel, must be given a reasonable con-

struction and effect.   If at any time the streets should be paved with such material or in such a manner as would clearly be inadequate or wasteful or extravagant, it might properly be held that to require the company to conform thereto would be an imposition on the company, and that it was not within the spirit and intent of the act that the company should be expected to comply under such circumstances.   Counsel for the railway company contend that, in view of the fact that nearly one-half of the life of its franchise has passed, it is unreasonable to require the company to lay an expensive and so-called permanent pavement, such as bitulithic on a concrete foundation.   It is not at all clear that the length of the life remaining in the franchise is to be considered in this connection.   The statute requires the company to pave and repave, and to keep in repair the street surface occupied by its tracks so long as the franchise continues in force.   If the character of the pavement required to be laid is not open to objection, we are inclined to think that the duty to lay it would be the same whether the remaining life of the franchise be long or short.   Whether that is so or not, we are satisfied that it is not at all unreasonable to require the company to put down the pavement specified in the notice at a time when more than one-half of the life of its franchise remains intact.   It is not claimed that the pavement in question is not an approved one.   It is not claimed that the action of the municipality in laying such a pavement was in any way improper or inappropriate.   We think the fact that at the expiration of the franchise the company's ties could be taken out of the concrete base only with much difficulty · affords no sufficient reason for relieving the company of the obligation to lay the pavement.

The remaining point urged by the railway company is that the demand that it pave with a patented article is unreasonable and illegal.   Counsel say that the railway company would be put absolutely at the mercy of the owner of the patent who, under the recent decision of the United States supreme court

in the case of *Henry* v. *A. B. Dick Co.*, may exact other conditions than the mere price of the article as a condition of its sale. It is not contended, however, that as to the paving in question the owner of the patent purposes to exact any conditions of the railway company other than the price of the paving material and the charge for laying it. That the expense is not unreasonable is indicated by the fact that the patented pavement will cost no more than a pavement of wooden or stone blocks. That it would be possible for the owner of the patent to exact conditions from the company does not, as we think, help the company in this case in the absence of a showing that such an exaction is in contemplation. If the owner of the patent was seeking to impose conditions, or if it intended to charge the company a higher price for the pavement than it charged the municipality, or others, under similar circumstances, a different question would be presented. Cases have been cited which hold that patented paving may not be used on public highways where there are statutes which require that contracts for work on public roads may be let only upon competitive bidding. In this Territory the law is the other way. *Lord* v. *City and County of Honolulu,* 20 Haw. 175.

The first, fourth, fifth, sixth, and seventh questions are answered in the affirmative; the second and third in the negative.

*D. L. Withington (Castle & Withington on the brief) for the Honolulu Rapid Transit & Land Co.*

*E. W. Sutton (Alexander Lindsay, Jr., Attorney General, with him on the brief) for the Territory and Superintendent of Public Works.*