CITY OF OWOSSO *v.* MICHIGAN UNITED RAILWAYS CO.

1. STREET RAILWAYS—MUNICIPAL CORPORATIONS—ORDER TO RELO-
   CATE TRACK—VALIDITY.
   An order of a city council to a street car company to change
   its track from the side to the middle of a street is not
   invalid because its track, within the prescribed points,
   crosses another railroad and it could not legally change
   its track at the crossing without the consent of the State
   railroad commission, since the statute (section 8365, 2
   Comp. Laws 1915) has pointed out the way by which
   consent may be secured, and it will not be assumed that
   such consent will be withheld.

2. SAME—MANDAMUS—IMPOSSIBLE ACT.
   Mandamus will lie to compel compliance with said order,
   since it cannot be said that it is one with which defendant
   cannot comply, that it is an impossible act, or that the
   issuance of the writ will be unavailing.

3. SAME — RESERVATION IN FRANCHISE — REGULATION BY MUNICI-
   PALITY—REASONABLENESS.
   Under section 8550, 2 Comp. Laws 1915, and the reservation
   in defendant's franchise, the city council had authority
   to order relocation of defendant's track from the side
   to the middle of the street; the considerations of drain-
   age, public safety, and convenience justifying the conclu-
   sion that it is a reasonable order, and there being no
   such engineering difficulties or expense as to make it
   unreasonable.

Certiorari to Shiawassee; Davis, J., presiding. Sub-
mitted April 2, 1918. (Calendar No. 28,106.)  De-
cided June 3, 1918.

Mandamus by the city of Owosso to compel the
Michigan United Railways Company and the Michi-
gan Railway Company to relay certain tracks. From
an order granting the writ, defendants bring certio-
rari. Affirmed.

*Sanford W. Ladd* and *Justin R. Whiting* (*Warren, Cady, Ladd & Hill,* of counsel), for appellants.

*Leon F. Miner,* for appellee.

BIRD, J. The plaintiff city passed a resolution requiring defendants to move their car track from the side to the middle of Corunna avenue between Lincoln avenue and the city limits, a distance of 1,800 feet. After reciting that it has been determined by the commissioner of public improvements that it is a necessary public improvement that Corunna avenue from Lincoln avenue east to the city limits be macadamized, the resolution proceeds:

"Now, therefore, be it resolved that it is hereby determined by this commission that it is advisable and necessary as a proper regulation to protect and promote the interest, safety, welfare and accommodation of the public of the city of Owosso that the tracks of the electric railway, known as 'The Owosso & Corunna Railway,' now operated by the Michigan Railway Company and owned by the Michigan United Railways Company, be removed to the center of said Corunna avenue from Lincoln avenue east to the city limits."

Defendants refused to comply with the resolution and denied the power of the city to impose the burden. A hearing was had at which testimony was taken bearing upon the reasonableness of the resolution. The trial court was of the opinion that the city had the power to make the order, that it was not an unreasonable one, and ordered a compliance therewith. Defendants have removed the proceedings to this court by writ of certiorari and raise two questions which call for our consideration.

1. Defendants' first contention is that, assuming the city possesses the power to order a change in the location of the track, the order is invalid because it requires defendants to do an act which they, under the

laws of the State, are prohibited from doing except by the consent and order of the State railroad commission, namely: The moving of the track from the point where it now crosses the Ann Arbor railroad track, the crossing being within the 1,800 feet covered by the order.

We are not unmindful of the rule that courts will refuse to order the issuance of a writ of mandamus when it is clear that it will prove unavailing, but we do not think the facts of this case disclose that such an order will be unavailing. While it is true, as urged, that defendants could not legally move their track from its present point of contact with the Ann Arbor track without the consent of the railroad commission (2 Comp. Laws 1915, § 8365), the statute has pointed out the way by which they may secure the consent of the railroad commission. We cannot assume that after the plaintiff city has determined the necessity of the change in aid of a public improvement, the railroad commission is going to withhold its consent. Of course, it may do so upon an investigation of the whole matter, but if it should, a showing to that effect by the defendants would undoubtedly relieve them from the effects of a contempt proceeding for not doing it. It cannot be said that it is an order that the defendants cannot comply with. They can move the track without objection except at the point of contact. At that point they may apply for permission to the railroad commission, with at least a fair prospect that the application will be granted. Therefore, it does not appear to be an impossible act, nor is it clear that the issuance of the writ will be unavailing.

*People, ex rel. Green,* v. *Railroad Co.,* 58 N. Y. 152, is helpful upon this branch of the case. A mandamus was asked to compel the railroad company to restore a public highway. The railroad company answered that it could not restore it without condemning land

and that the outcome of condemnation proceedings was so uncertain that the writ ought not to issue. The specific objections thereto being that:

"A mandamus will not command that which is impossible; neither will it issue to compel one to do an act which he has not within himself the power to do."

In overruling these objections the court said in part:

"The third point made by the appellant is, that a mandamus will not command that which is impossible. It is claimed that to obey the command of the peremptory writ, in this case, the appellant must acquire by compulsory measures additional land to that now owned by it; and that it cannot now take such measures, for that it has no statutory power so to do. It is true that the court will not, by its writ of mandamus, command a defendant to perform an impossibility. And it is so, that there must be express sanction and clear authority of law before a railroad company can condemn land for its purposes. *Rensselaer, etc., R. Co.* v. *Davis,* 43 N. Y. 137. But there is not in this case the difficulty which the appellant fears. * * * The statute cited gives ample power to take compulsorily the land thus required. * * * It follows that it is possible to acquire the additional land, and that the writ does not command an impossibility nor an unlawful act.

"The next point made by the appellant grows out of the last. It is, that a mandamus will never issue to compel one to do an act which he has not within himself the power to do. This proposition, applied to this case, is, that the appellant will not be compelled to restore the highway at a certain point, if lands must be acquired therefor by proceedings under the statute. But this writ has, not seldom, been sent to *quasi* public corporations directing them to action, which required similar proceedings on their part. *Reg.* v. *Railway Co.,* 2 Ad. & El. (N. S.) 47. In that case, it was held that though the time in which compulsory proceedings might be taken had expired, that fact presented no reason why a mandamus should not go. *A fortiori,* may it go if the power to take such proceedings exists. The first position was questioned in *Reg.*

v. *Railway Co.*, 10 Ad. & El. 531-557.   The latter
position was not.

"To the argument of the appellant, that in proceed-
ings to take lands compulsorily it might be defeated,
it is to be answered: that if that result was upon the
merits and not from its own default or miscarriage,
it would be a good answer for it, if proceeded against
as in contempt for not obeying the writ.   The same
court which adjudged that it should not take the land
would not punish it for not taking it when permission
to take could not be had."

2. Defendants' second contention is that, independ-
ent of the objection just considered, the city has no
power to impose the burden upon them of moving the
track.   The principal reasons assigned are: (*a*) That
to construct the track in the middle of the street is to
construct it immediately over the sewer which, when
being repaired, will interfere with the operation of its
cars; (*b*) That the track was constructed nearly 22
years ago and the city made no objection to its loca-
tion; (*c*) That it made no objection to its re-construc-
tion a few years ago, and (*d*) That while the reser-
vation of power in the franchise gives the city certain
right of control and regulation, that control and regu-
lation does not include the power to compel them to
move their track at an estimated expense of $3,500.

The reservations in the franchise under which de-
fendants are operating are relied on as well as the
statutory provision (which is made a part thereof by
reference), to establish the city's authority to make
the order in question.   The reservations referred to
are:

"And the said street railway shall be constructed
and laid on such parts of the streets hereinbefore des-
ignated as the common council of said city shall direct,
* * *   and the rails shall conform to the grade of
the street on which the track is laid as now fixed or
may hereafter be established by the city."

"The common council hereby reserves the right to

make such further regulations as may from time to time be deemed necessary to protect the interest and safety and welfare and accommodation of the public in relation to said railway, not inconsistent with the provisions of this ordinance."

"Said railway company shall at all times be subject to any ordinance that shall be passed by the common council of the city of Owosso, and shall at all times be subject to the laws of the State of Michigan governing railway companies."

The statutory provision provides that:

"The common council or other corporate authorities of the city or village, in which any street railway shall be located, may, from time to time, by ordinance or otherwise, establish and prescribe such rules and regulations in regard to such railway as may be required for the grading, paving and repairing the street, and the construction of sewers, drains, reservoirs and crossings, and the laying of gas and water pipes, upon, in and along the streets traversed by such road, and to obstructions thereon." 2 Comp. Laws 1915, § 8550.

We entertain no doubt that these reservations in the franchise are sufficient to establish the authority of the city to make the order in question. *City of Detroit* v. *Railway Co.*, 90 Mich. 646; *City of Kalamazoo* v. *Traction Co.*, 126 Mich. 525; *City of Lansing* v. *Railway Co.*, 109 Mich. 123; 2 Elliott on Roads & Streets (3d Ed.), § 958.

It is said by Elliott in his work on Roads and Streets, *supra,* that:

"It has also been held that street railway companies take the privilege granted to them subject to the municipal authority to regulate the use of the streets as the necessities of the public may require, and that this authority extends so far as to vest in the municipality a right to change the track of the railway from one part of the street to another."

The considerations of drainage, public safety and convenience alleged in the order and shown by the

proofs justify the conclusion of the trial court that it is a reasonable order. The record shows that the 1,800 feet is part of a much traveled street and highway; that defendants' track from the business portion of Owosso to Corunna is all in the middle of the street save the strip in question. Travelers leaving Owosso going in an easterly direction are obliged to cross the track twice, which would be unnecessary if the track were located in the middle of the street. The proposed change of location of the track presents no such engineering difficulties nor expense as to make the order unreasonable.

The order of the trial court is affirmed.

Ostrander, C. J., and Moore, Steere, Brooke, Fellows, Stone, and Kuhn, JJ., concurred.