THE DETROIT EDISON COMPANY v SOUTHEASTERN
MICHIGAN TRANSPORTATION AUTHORITY

Docket No. 88462. Submitted April 21, 1987, at Detroit. Decided June
16, 1987. Leave to appeal applied for.

The Detroit Edison Company brought an action in the Wayne
Circuit Court against Southeastern Michigan Transportation
Authority seeking payment of costs it incurred in relocating,
removing or abandoning certain utility facilities in connection
with the construction by defendant of the Central Automated
Transit System, commonly known as the Detroit People Mover.
Both parties brought motions for summary disposition. The
trial court, Arthur M. Bowman, J., granted defendant's motion.
Plaintiff appealed.

The Court of Appeals *held:*

1. A public corporation such as a municipality need not pay a
utility's relocation costs when such expenses are necessitated
by the municipality's discharge of a governmental function.
This rule emanates from the principle that a utility's use of
public roads is subordinate to, and thus may not interfere with,
the municipality's use of the roads when discharging govern-
mental functions.

2. The Metropolitan Transportation Authorities Act, under
which defendant was created, grants transportation authorities
police powers akin to that of a municipality for limited pur-
poses such as the construction of public transit systems.

3. The construction of public transit systems by a transporta-
tion authority is not a proprietary activity, but rather is in the
nature of a discharge of a governmental function.

4. Plaintiff's use of the streets is statutorily subordinate to
that of defendant. Thus, under an application of the general

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges §§ 234, 255.

Am Jur 2d, Public Utilities §§ 1 *et seq.*

Constitutionality of state legislation to reimburse public utilities for
cost of relocating their facilities because of highway construction,
conditioned upon federal reimbursement of the state under the
terms of Federal-Aid Highway Act (23 USCS § 123). 75 ALR2d
419.

rule discussed above, defendant is not liable for costs incurred by plaintiff.

Affirmed.

PUBLIC UTILITIES — METROPOLITAN TRANSPORTATION AUTHORITIES ACT — CONSTRUCTION OF PUBLIC TRANSIT SYSTEMS.

A public utility may not seek reimbursement from a transportation authority created under the Metropolitan Transportation Authorities Act of costs incurred in relocating, removing or abandoning the utility's facilities in connection with the construction of a public transit system by the transportation authority; the construction of a public transit system by a transportation authority is not a proprietary activity, but rather is an exercise of a governmental function for which the transportation authority may wield police powers akin to that of a municipality to claim a right to the use of public streets superior to that of a public utility (MCL 124.403; 124.406[c]; MSA 5.3475[103], 5.3475[106][c]).

*Solomon Bienenfeld* and *Jane K. Souris,* for plaintiff.

*George E. Ward,* for defendant.

Before: SULLIVAN, P.J., and MACKENZIE and R. M. DANIELS,* JJ.

MACKENZIE, J. Plaintiff appeals as of right from an order denying its motion for summary disposition and granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

This case arises out of defendant's construction of the Central Automated Transit System (CATS), commonly known as the downtown Detroit People Mover. Before construction began, it was determined that certain of plaintiff's utility facilities were located on or under public streets within the projected route of CATS, and would have to be relocated, removed, or abandoned. Plaintiff was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

willing to relocate its facilities, but demanded that defendant bear the cost. Defendant refused, apparently on the basis of an opinion of the Attorney General, OAG, 1981-1982, No 6004, p 436 (October 30, 1981). The parties eventually entered into an agreement whereby they essentially agreed that plaintiff would proceed with the relocation work but would sue defendant to recover its costs. This suit, and the parties' respective motions for summary disposition, followed.

The issue presented is whether plaintiff or defendant must bear the cost of the relocation of plaintiff's public utility facilities in connection with defendant's construction of CATS. In a well-reasoned opinion, Circuit Judge Arthur Bowman held that defendant is not liable for the expenses incurred by plaintiff in the relocation of its utility facilities. We quote Judge Bowman's opinion and adopt it as our own:

In *City of Pontiac v Consumers Power Co,* 101 Mich App 450, 453 [300 NW2d 594] (1980), lv den 410 Mich 908 (1981), the Court stated the general rule in utility relocation cases:

"Relocation costs must be borne by the utility if necessitated by the city's discharge of a governmental function, whereas the expenses must be borne by the city if necessitated by its discharge of a proprietary function. Whether the utility has located its transmission facilities by virtue of an easement, franchise, plat, or other grant is irrelevant; all are treated identically."

The rationale behind the rule was explained by the Court in *New Orleans Gaslight Co v The Drainage Commission of New Orleans,* 197 US 453, 460-462; 25 S Ct 471; 49 L Ed 831 (1905):

"The police power, in so far as its exercise is essential to the health of the community, it has been held cannot be contracted away . . . . We think whatever right the gas company acquired

was subject, in so far as the location of its pipes was concerned, to such future regulations as might be required in the interest of the public health and welfare.

* * *

"In the exercise of the police power of the state, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense, none of the property of the gas company has been taken, and the injury sustained is damnum absque injuria."

Also see, *People ex rel City of Chicago v Chicago City R Co*, 324 Ill 618; 155 NE 781 (1927); *Peoples Gas Light & Coke Co v City of Chicago*, 413 Ill 457; 109 NE2d 777 (1952).

In Michigan this line of reasoning has been applied to the situation where a city desired to change the existing grade of a road and pursuant to this goal requested a trolly [sic] car company to remove parts of its railway ties, *Detroit v The Fort Wayne & E R Co*, 90 Mich 646 [51 NW 688] (1892), or where the construction of city sewers necessitated the removal of utility poles, *Detroit Edison Co v Detroit*, 332 Mich 348 [51 NW2d 245] (1952), or where the construction of a sewage treatment facility required the relocation of a utility's equipment, *Michigan Bell Telephone Co v Detroit*, 106 Mich App 690 [308 NW2d 608] (1981), lv den 414 Mich 869 (1982). See also, *Consumers Power Co v Costle*, 468 F Supp 375 (ED Mich, 1979).

In each of these cases it is significant to note that the Courts by examining the relevant statutes, ordinances or agreements, found that the right of the utility to use the public road was subordinate to that of the municipality's proposed use. In these cases the activities of the cities which necessitated a relocation of a utility's equipment were found to be for a public purpose—or a governmental function.

By way of contrast, courts have found a govern-

mental agency liable for the utility's relocation costs where the peculiar statutory scheme under which a municipality was condemning land contemplated that the city would acquire interests in land, such as the utility's in the roads, through purchase, *City of Centerline v Michigan Bell Telephone Co*, 387 Mich 260 [196 NW2d 144] (1972), or where the governmental agency which required relocation was not among those agencies under the statutes pertaining to the vacation of plats, MCL 560.2 and 560.60; MSA 26.432 and 26.490, which were entitled not to pay for relocation costs, *Detroit Bd of Ed v Michigan Bell Telephone Co*, 395 Mich 1 [232 NW2d 633] (1975). Significantly, in both of these cases the Court's decisions eschewed addressing whether a municipality would ever require relocation without having to pay costs, but rather narrowly based the result achieved on the provisions of relevant statutes. Finally, a municipality has been found liable for relocation costs where its activity was not deemed to be a governmental function, *City of Pontiac v Consumers Power Co, supra.*

In the case at bar plaintiff argues that defendant is liable for the relocation costs for several reasons. First, it is contended that the nature of defendant is such that it cannot exercise police powers in the same manner as does a municipal corporation such as a city, township or village. This argument is reminiscent of the reasoning used by the Court in *Detroit Bd of Ed, supra,* discussed above, to find the plaintiff liable for relocation costs.

The strength or weakness of plaintiff's argument is found in an examination of precisely what power has been delegated to authorities, such as defendant, under the Metropolitan Transportation Authorities Act; 1967 PA 204, MCL 124.401 *et seq.* [MSA 5.3475(101) *et seq.*], under which defendant was created.

Section 3 of the Act, MCL 124.403 [MSA 5.3475(103)] provides as follows:

"Authorities created under this act shall plan,

acquire, construct, operate, maintain, replace, improve, extend and contract for public transportation facilities. An authority is a *public benefit agency and instrumentality of the state with all the powers of a public corporation, for the purpose of planning, acquiring, constructing, operating, maintaining, improving and extending public transportation facilities,* and for controlling, operating, administering and exercising the franchise of such transportation facilities, if any, including charter operations as acquired." (Emphasis added.)

Further elaboration of an authority's powers and rights is found in [sub]section 6(c) of the Act, MCL 124.406(c) [MSA 5.3475(106)(c)], which states in pertinent part that an authority may:

"*Acquire and hold, by purchase, lease, grant, gift, devise, bequest, condemnation or other legal means, real and personal property, including franchises, easements or rights of way on, under or above any property* within the area included within the metropolitan transportation authority . . . . The *authority shall have the right to use space and areas over, under and upon the public streets and highways to carry out its duties subject to reasonable use.* (Emphasis added.)

While the Court would agree with plaintiff that the Legislature has not conferred on defendant general police powers, the fact remains that § 3 of the Act expressly confers on authorities such as defendant, "all the power" of a public corporation for the purpose of, *inter alia,* constructing public transportation facilities. This unrestricted grant of "all power["] to an authority when the authority is constructing public transportation facilities must therefore be seen as including those police powers typically delegated to other public corporations such as municipalities which pertain to the use and control of the streets. Moreover, apart from the broad grant of power to authorities for purposes of constructing public transportation facilities, [sub]section 6(c) additionally, expressly confers on authorities such as defendant the specific right "to use space and areas over, under and

upon the public streets" to carry out its duties such as constructing public transportation facilities. This latter express grant of power to use the streets further makes clear the legislative intent that authorities would have police power with respect to streets for the purposes enumerated in § 3.

Based on the foregoing statutory analysis the Court finds that in this case, unlike that found in *Detroit Bd of Ed, supra,* the [L]egislature has conferred on defendant powers akin to municipalities over public roads when the defendant is constructing public transportation facilities. Plaintiff's argument to the contrary is thus without merit.

The next argument of plaintiff as to why defendant ought be found liable for relocation costs is that the activity engaged in by defendant is not a governmental function. If true, the holding of *City of Pontiac, supra,* would dictate that defendant must pay the relocation costs. Reliance by plaintiff is placed on the holding of *Borski v City of Wakefield,* 239 Mich 656 [215 NW 19] (1927), which held that a city operating a common carrier of passengers for hire was engaged in a proprietary function and thus liable in a tort action.

There are some difficulties in utilizing in a nontort setting cases such as *Borski,* which find the operation of a common carrier for hire a nongovernmental function. First, *Borski* only addresses the tort liability of a governmental agency. It is unclear whether its holding ought to apply in a situation unrelated to tort liability. Furthermore, while *Borski* addresses the operation of a common carrier for hire, it does not pertain to the use of the streets for the construction of public transit facilities. *Borski's* holding would thus appear unapplicable. In this regard, other courts which have considered the question of whether the construction of such public transit systems is a governmental function, have held such activities to be governmental rather than proprietary in nature. *Peoples Gas Light & Coke Co v City of Chicago, supra,* and cases cited therein. The ratio-

nale given is that the construction of such a system is merely an extension of the public streets which thus further accomodates [sic] public transportation. *Id.* [1]

[1] *Peoples Gas Light & Coke Co, supra,* is especially pertinent since the case dealt with, as does the case at bar, whether a governmental agency must reimburse a public utility for the costs of relocation of the utility's equipment due to the construction of a mass transit system.

The Court therefore is of the opinion that *Borski,* is distinguishable from the case at bar as not specifically governing whether the construction of a mass transit system is proprietary in nature. Furthermore, this Court finds the reasoning of the court in *Peoples Gas Light & Coke Co* persuasive, and thus adopts it. Accordingly, the Court finds the construction of the CATS by defendant to be, for purposes of determining whether defendant must reimburse plaintiff, a governmental function.[2]

[2] The Court's holding in this regard is further supported by the legislative pronouncement contained in § 21 of the Act, MCL 124.421 [MSA 5.3475(121)], which provides "This act, being necessary for the public peace, health, safety and welfare, shall be liberally construed to effect the purposes hereof, *which are declared to be public purposes.*" (Emphasis added.)

The Court lastly turns to plaintiff's contention that its use of the streets stands on an equal footing with that of defendant. The Court disagrees.

As noted earlier when acting for the purpose of constructing public transportation facilities the defendant does have police powers. Moreover, there is an express unqualified grant of power to use the streets for such purposes. In contrast, however, plaintiff's right to use the space above, below or upon the streets is not as broad.

MCL 247.183 [MSA 9.263] authorizes public utilities, such as plaintiff, to enter upon, construct and maintain telegraph, telephone and power lines, and the like, upon any public road. MCL 247.185 [MSA 9.265], however, provides that the construction and maintenance of all such telegraph, tele-

phone and power lines, and the like, "*shall be subject to the paramount right of the public to use* such public places, roads, bridges, and waters, and *shall not interfere with other public uses thereof.*" (Emphasis added.) Thus, whatever right conferred on the plaintiff to make use of public roads provided for in MCL 247.183 [MSA 9.263] is under MCL 247.185 [MSA 9.265] clearly subordinate to, and may not interfere with[,] the right of the public to use such roads for public uses. As noted earlier, defendant, by statutory definition contained in MCL 124.403 [MSA 5.3475(103)], is "a public benefit agency and instrumentality of the state." Its actions therefore may be seen as those of the public. Further, as previously found, the construction of a public transit system such as CATS is a governmental function. Such activities, moreover, are expressly authorized by statute[,] MCL 124.403 [MSA 5.3475(103)], and are declared to be for a public purpose. MCL 124.421 [MSA 5.3475(121)]. Defendant's utilization of the streets therefore must be held to be for a public use within the meaning of MCL 247.185 [MSA 9.265]. It follows therefore that plaintiff's use of the streets does not stand [on] an equal footing, in this case, and is indeed subordinate to the use of the streets by defendant, in this case.

In summary of the above, the Court finds that for the limited purposes expressed in MCL 124.403 [MSA 5.3475(103)], such as the construction of public transit systems, defendant has been statutorily granted police powers akin to that of a municipality over the use of public roads. Furthermore, the Court finds that the construction of public transit systems by defendant, such as CATS, is not a proprietary activity but rather in the nature of the discharge of a governmental function. Finally, the Court holds that plaintiff's use of the streets is statutorily subordinate to that of defendant's use thereof in the case at bar. From these conclusions it follows that defendant is not liable to pay plaintiff's relocation expenses necessitated by the construction of CATS.

As noted earlier, the general rule in cases such as the one at bar is that a city need not pay a utility's relocation costs when such expenses are necessitated by the city's discharge of a governmental function. This rule emanates from the principle that a utility's use of public roads is subordinate to, and thus may not interfere with the municipality's use of the road[s] when discharging governmental functions.

In the instant case the conclusions reached above indicate that the general rule applies. The conclusion that defendant is statutorily empowered to exercise police power over public roads for the purpose of constructing mass transit facilities indicates that defendant functionally acts as a municipality for purposes of applying the rule. Furthermore, it was found that the construction of CATS was a governmental function, as opposed to a proprietary one. Finally, it would appear that since [sic], under the circumstances of this case, by dint of statute, plaintiff's use of the public roads is subordinate to that of defendants. Thus, all the constituent elements of the general rule and the principle from which it flows are present in this case. Moreover, the above conclusions indicate none of the exceptions to the general rule, as asserted by plaintiff, are present in this case. It follows therefore that the general rule does apply with the resultant finding that defendant is under no duty to pay for plaintiff's expenses necessitated by the construction of CATS. This being so, plaintiff's motion for summary disposition must be denied and defendant's motion for summary disposition must, in turn, be granted.

Affirmed.