CITY OF PONTIAC v CONSUMERS POWER COMPANY

Docket No. 49434. Submitted June 18, 1980, at Lansing.—Decided November 5, 1980. Leave to appeal applied for.

The City of Pontiac sought an injunction to require Consumers Power Company to remove and relocate certain power lines at a construction site operated by the city. Oakland Circuit Court, William J. Beer, J., issued a preliminary mandatory injunction ordering relocation of the power lines. The Court of Appeals vacated the order subject to the provision that the injunction could be reinstated if the city advanced costs of relocation incurred during relocation of the power lines begun following the issuance of the injunction. Defendant completed the relocation despite the vacation of the injunction. The parties, thereafter, filed a stipulation of facts and submitted briefs on questions of law. Judge Beer subsequently found that public necessity required relocation of the power lines and ordered defendant to bear the costs of relocation. Defendant appeals. *Held:*

The construction and renovation of the hospital buildings is necessary to the operation of the hospital. Such operation is a proprietary function. Plaintiff's construction activities pursuant to this proprietary function necessitated the relocation of the power lines. Thus, plaintiff must bear the cost of utility service relocation.

Reversed and remanded.

1. MUNICIPAL CORPORATIONS — PROPRIETARY FUNCTIONS — GOVERN-
     MENTAL FUNCTIONS — PUBLIC UTILITIES — RELOCATION COSTS.
   Costs of removing and relocating electric power lines should be borne by a utility if necessitated by a city's discharge of a governmental function, but a city must bear such costs where necessitated by a discharge of its proprietary function.

2. MUNICIPAL CORPORATIONS — OPERATION OF MUNICIPAL HOSPITAL —
     PROPRIETARY FUNCTIONS — CONSTRUCTION AND RENOVATION OF
     HOSPITALS.
   The day-to-day operation of a municipal hospital is a proprietary

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Electricity, Gas, and Steam § 56.
    56 Am Jur 2d, Municipal Corporations § 567.
[2] 40 Am Jur 2d, Hospitals and Asylums § 22.

function of government, and, where construction and renovation of hospital buildings is necessary to the operation of a hospital, it is part of the ongoing process of the operation and is also a proprietary function.

*James D. Smiertka,* Deputy City Attorney, for plaintiff.

*James W. Dempsey* and *Jack D. Shumate,* for defendant.

Before: M. F. CAVANAGH, P.J., and D. E. HOLBROOK, JR., and J. H. PIERCEY,* JJ.

PER CURIAM. Plaintiff, City of Pontiac, requested that defendant, Consumers Power Company, remove and relocate two electric power lines it maintained on the west side of Johnson Avenue in the City of Pontiac to the east side of Johnson Avenue. The reason for this request was the beginning of construction and renovation of plaintiff's Pontiac General Hospital. The city asserted that the continued presence of the lines in their site abutting the present Pontiac General Hospital would pose a safety hazard to construction equipment and personnel on the construction site.

Pursuant to the plaintiff's motion, the circuit court issued a preliminary mandatory injunction which ordered the defendant to relocate its lines to the east side of the street. The Court of Appeals vacated the order for the preliminary mandatory injunction (Docket No. 99367, order of April 12, 1979), subject to the provision that the injunction could be reinstated if the plaintiff city advanced the defendant the cost of relocation. Prior to the time when the Court of Appeals vacated the injunction, the defendant had commenced relocating

* Circuit judge, sitting on the Court of Appeals by assignment.

its lines in order to be able to comply with the terms of the preliminary mandatory injunction. The defendant completed the relocation despite the vacation of the injunction. Defendant counterclaimed for the cost of relocating the poles and lines. The trial court recognized the defendant's property interest in the location of the transmission lines but found that public necessity required relocation of the lines, and so the defendant was required to bear the cost of relocation, stipulated to be about $66,886.17. The trial court disregarded the proprietary/governmental function distinction because it found that the possibility of danger to the public from the construction equipment coming into contact with the power lines caused the city's request for the relocation to be an exercise of the city's police power.

The Michigan Supreme Court has declined to decide whether a public utility's equipment relocation can be required without compensation by governmental authority in *Detroit Board of Education v Michigan Bell Telephone Co,* 51 Mich App 488; 215 NW2d 704 (1974), *aff'd* 395 Mich 1; 232 NW2d 633 (1975). In doing so, the Supreme Court let stand the Court of Appeals decision requiring a school board to compensate a utility for relocation of its utility equipment to accommodate a school district's building expansion program. The school board proposed to vacate certain plats and an alley in order to construct additions to a school. The utility asserted that it was entitled to retain an easement in the property or be compensated for the cost of relocation. The Supreme Court decided that, because the school board was not empowered by the Legislature in the School Code, MCL 340.192; MSA 15.3192, to order relocation, it was unnecessary for the Court to decide "whether

relocation without compensation can be required by a governmental authority in any circumstances * * *". 395 Mich 1, 5.

The Court of Appeals decision in *Michigan Bell* focused on the fact that the vested property right of the utility was not only being infringed upon but was being taken by the school board's actions.

In the instant case, defendants are not being required to give up the utility easement but, rather, are being asked to relocate the easement because of the hospital construction.

The franchise contract between the defendant utility and plaintiff municipality provides that the city, through its governing body, retains the right to specify "the designation and location of all lines of poles and wires". 1905 PA 264. The city has exercised that right in originally directing the power company, defendant's predecessor, to locate the transmission lines on the west side of Johnson Avenue. Nothing in the act suggests that the city has the right thereafter to direct the relocation of poles and wires and to place the burden of relocation costs on the utility.

McQuillin, Municipal Corporations, § 34.74(a), 184 states the general principle in utility relocation cases. Relocation costs must be borne by the utility if necessitated by the city's discharge of a governmental function, whereas the expenses must be borne by the city if necessitated by its discharge of a proprietary function. Whether the utility has located its transmission facilities by virtue of an easement, franchise, plat, or other grant is irrelevant; all are treated identically.

*Detroit Edison Co v Detroit,* 332 Mich 348; 51 NW2d 245 (1952), involved the relocation of an electric transmission line necessitated by the construction of a city sewer system, a function then,

as now, held to be governmental in nature. The Court in that case held that the relocation costs must be borne by the utility company. The Michigan Supreme Court in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), held that the day-to-day operation of a municipal hospital is a proprietary function within the meaning of the governmental tort liability act. The Court held that the day-to-day operation of a public hospital is not a governmental function because the activity is not of such a peculiar nature that it can only be done by government. It logically follows that, although construction of a public hospital facility is not a "day-to-day" activity of a public hospital, it is vital to the operation of such hospital. The hospital operation necessarily requires a physical facility. Because the construction of buildings is necessary to the operation of the hospital, we do not see how the building construction and renovation can be treated other than as a part of the ongoing process of the hospital's operation.

It is the plaintiff city's construction activities, pursuant to its proprietary function of operating the Pontiac General Hospital, which made the relocation of the utility lines necessary. If a private hospital had engaged in the same construction and had required the relocation of the lines, there would have been no question that the hospital would have had to shoulder the cost of moving the utility lines.

We find that the rule of *Parker, supra,* applies to the present case in the determination of whether this plaintiff is engaged in a governmental or proprietary function in undertaking construction in its public hospital. Here, it is equitable that the governmental entity which is operating in a proprietary function should be required to

bear the cost of utility service relocation which is made necessary because of its activities.

We remand for a determination of the amount of the costs of relocation.

Reversed and remanded. No costs, a public question.