THE DETROIT EDISON COMPANY v CITY OF DETROIT

Docket No. 107727. Submitted April 12, 1989, at Detroit. Decided September 6, 1989.

The Detroit Edison Company, which at a cost of $800,000 relocated its utility equipment after certain streets were vacated in the course of the Cobo Hall expansion project, brought an action in Wayne Circuit Court seeking reimbursement for the relocation costs from the City of Detroit, the owner and operator of Cobo Hall. The court, Michael L. Stacey, J., granted summary disposition in favor of defendant. Plaintiff appealed.

The Court of Appeals *held:*

The costs of relocating equipment or facilities owned by a utility must be borne by the utility if such costs are necessitated by a city's discharge of a governmental function, but a city must bear such costs where they are necessitated by its discharge of a proprietary function. Here, the expansion of Cobo Hall was an exercise of a governmental, rather than a proprietary, function of the City of Detroit.

Affirmed.

PUBLIC UTILITIES — RELOCATION OF UTILITY EQUIPMENT AND FACILITIES — LOCAL GOVERNMENT PROJECTS.

The costs of relocating equipment or facilities owned by a utility must be borne by the utility if such costs are necessitated by a city's discharge of a governmental function, but a city must bear such costs where they are necessitated by its discharge of a proprietary function.

*Solomon Bienenfeld, Thomas P. Beagen* and *Laura Reyes Kopack,* for plaintiff.

*Lewis, White & Clay, P.C.* (by *Ulysses W. Boykin*), for defendant.

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 305, 306.

See the Index to Annotations under Governmental Immunity or Privilege; Utilities.

Before: GRIBBS, P.J., and MURPHY and NEFF, JJ.

PER CURIAM. This suit was brought by The
Detroit Edison Company against the City of De-
troit to recover Edison's cost of relocating certain
equipment and steam conduits as a result of the
city's expansion of Cobo Hall, a convention center
owned and operated by the city.

The trial court, in a thoroughly researched and
well-written opinion, granted the city's motion for
summary disposition on the basis that the expan-
sion of Cobo Hall represented the exercise by the
city of a governmental function, and not the exer-
cise of a proprietary function. Edison now appeals
as of right from the circuit court order granting
the city's motion for summary disposition and
denying Edison's motion for summary disposition
pursuant to MCR 2.116(C)(10). We affirm the trial
court's grant of summary disposition in favor of
the City of Detroit.

I

The uses of Cobo Hall include privately and
publicly sponsored trade shows, conventions, din-
ners, bridge tournaments, receptions, dances, bal-
lot counting, classes, religious meetings, and the
like. Cobo Hall has a cocktail lounge, a restaurant,
ticket booths, and commercial displays. To use any
of the various halls, rooms, or other facilities at
Cobo Hall, customers must pay a rental fee accord-
ing to a schedule. Both private and public organi-
zations, including the City of Detroit, pay these
rental charges when they use Cobo Hall's facili-
ties.

The operation of Cobo Hall is within the city's
Civic Center Department, whose head is appointed
by the mayor. A general manager of Cobo Hall is

responsible for day-to-day operations of the facility, and he reports to the head of the department. The furnishing of food, janitorial, and electrical services is contracted out, with a percentage of revenue paid to Cobo Hall. Cobo Hall has its own sales and marketing division, which actively seeks bookings of events through advertising, public relations, and direct sales. The 1987-88 budget for marketing was $500,000, not including in-house salaries.

Cobo Hall's budget is part of the city's annual budget. The appropriation for the operations of Cobo Hall during fiscal year 1987-88 was $9,786,-034. The revenue from the actual operations of Cobo Hall was $2,414,034. The State of Michigan provided economic development reimbursement funds for Cobo Hall of $5,350,000 during that period, leaving the city to make up a deficit of $2,022,000 from other sources. One source of revenue for the city is from "building rentals" in the amount of $1,339,500.

In 1983, Cobo Hall customers expressed dissatisfaction with the limited size of that facility. After feasibility studies were completed, the city council made the decision to expand Cobo Hall. Under the Cobo Hall expansion project, the exhibit area was doubled, the number of meeting rooms increased, and the square footage of Cobo Hall was expanded from one million to 2.4 million square feet.

The expansion of Cobo Hall necessitated vacating certain adjoining public streets. By resolution dated March 5, 1986, the city council approved a vacation of those public streets. This resolution stated in pertinent part:

> Resolved, That because the vacations are the result of a necessary Public Improvement, all private utility companies are hereby directed to relo-

cate their facilities from the vacated streets and alleys at no expense to the City and be it further

Resolved, That the City Engineering Department, upon proper application and cash deposit, shall issue permits to the private utility companies for relocation of their facilities from the vacated streets and alleys to public streets and alleys consistent with the public health, safety, convenience and general welfare.

In a relocation agreement executed by the city and Edison, it was agreed that Edison's relocation of its equipment would be "without prejudice to or waiver of Utility's rights or claims." Thereafter, as necessitated by the expansion of Cobo Hall, Edison relocated its equipment at a cost of approximately $800,000.

II

In *Pontiac v Consumers Power Co,* 101 Mich App 450, 453; 300 NW2d 594 (1980), lv den 410 Mich 908 (1981), this Court stated the general principle in utility relocation cases as follows:

Relocation costs must be borne by the utility if necessitated by the city's discharge of a governmental function, whereas the expenses must be borne by the city if necessitated by its discharge of a proprietary function. Whether the utility has located its transmission facilities by virtue of an easement, franchise, plat, or other grant is irrelevant; all are treated identically. [See also *The Detroit Edison Co v Southeastern Michigan Transportation Authority,* 161 Mich App 28, 30; 410 NW2d 295 (1987), lv den 430 Mich 868 (1988).]

In *Pontiac,* the City of Pontiac requested that Consumers Power Company remove and relocate two electric power lines to facilitate the construc-

tion and renovation of Pontiac General Hospital. This Court in *Pontiac, supra,* p 454, held that it was the City of Pontiac's construction activities, pursuant to its proprietary function of operating the Pontiac General Hospital, that made the relocation of the utility lines necessary. The Court found that it was equitable that the governmental entity that was engaged in a proprietary function should be required to bear the cost of utility service relocation which was made necessary because of its activities. *Pontiac, supra,* pp 454-455.

This Court affirmed the trial court's finding in *Detroit Edison* that the construction of a public transit system by SEMTA was not a proprietary activity but was, rather, in the nature of a discharge of a governmental function. Accordingly, this Court also affirmed the trial court's conclusion that SEMTA was not liable to pay Detroit Edison's relocation expenses which were necessitated by the construction of the Downtown Detroit People Mover. *Detroit Edison, supra,* pp 36-37.

Likewise, in *Michigan Bell Telephone Co v Detroit,* 106 Mich App 690, 696; 308 NW2d 608 (1981), this Court stated that the construction of a sewer facility is clearly a governmental function, that the common-law rule requiring a utility to remove its facilities at its own expense where necessary to protect the public health or general welfare was applicable, and that, accordingly, the trial court erred in holding that the City of Detroit was required to reimburse the utility for the relocation expenses necessitated by the construction of a sewage treatment facility.

III

We now turn to the dispositive question: Was the expansion of Cobo Hall an exercise of a gov-

ernmental or proprietary function of the City of Detroit? To help answer this question we look to the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, and cases that construe the act.

Strictly speaking, the act and the cases which construe it do not apply in the context of this case. However, the concepts of governmental function and proprietary function in a tort context are, at least to some extent, comparable to those concepts in a nontort context such as the present case. We are confident that we can look to that body of law for guidance.

In *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 620; 363 NW2d 641 (1984), our Supreme Court defined the term "governmental function" as "an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law."

Section 1 of the governmental tort liability act, MCL 691.1401(f); MSA 3.996(101)(f), defines "governmental function" as follows: " 'Governmental function' is an activity which is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."

Under the definition of governmental function found in *Ross,* and § 1 of the governmental tort liability act, and within the reasoning of previous cases which have discussed relocation costs necessitated by other kinds of projects, we hold that the expansion of Cobo Hall constituted a governmental function.

IV

The expansion of Cobo Hall was financed through funds obtained through the State Convention Facility Development Act, MCL 207.621 *et*

*seq.*; MSA 7.559(21) *et seq.* As the trial court noted, the purpose of the development act was to provide a source of funding for, inter alia, the enlargement of convention facilities owned by local units of government. MCL 207.622; MSA 7.559(22).

To qualify for funding under the development act, a municipality must submit the plans for the proposed project and financing to the state treasurer for approval. After approval by the state treasurer, funds will be made available for distribution for the proposed project. MCL 207.631; MSA 7.559(31); MCL 207.629; MSA 7.559(29).

We agree with the trial court that the expansion of Cobo Hall is authorized by a state statute, i.e., the development act. Thus, the expansion of Cobo Hall would fall within the definition of a governmental function under both the common-law and the statutory definition found under the governmental tort liability act.

Under the governmental immunity analysis employed in tort cases, a governmental agency is immune from tort liability unless the activity engaged in is proprietary in nature or falls within one of the other statutory exceptions to the governmental immunity act. *Ross, supra,* p 620. We believe, as did the trial court, that the expansion of Cobo Hall constitutes a governmental function that is not proprietary in nature.

Section 13 of the governmental tort liability act, MCL 691.413; MSA 3.996(113), states in pertinent part:

> Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees.

In *Hyde v University of Michigan Board of
Regents,* 426 Mich 223, 257-259; 393 NW2d 847
(1986), our Supreme Court stated:

> Before an activity is deemed a proprietary func-
> tion, it must satisfy two tests:
> 1) The activity must be conducted primarily for
> the purpose of producing a pecuniary profit, and
> 2) The activity cannot normally be supported by
> taxes or fees.
> There is nothing in § 13 which requires that the
> activity actually generate a profit before it can be
> deemed a proprietary function.
>
> * * *
>
> The existence of a profit is not an irrelevant
> consideration, however. The fact that a govern-
> mental agency pursues an activity despite consis-
> tent losses may be evidence that the primary
> purpose is not to make a pecuniary profit, but it is
> not conclusive evidence. Conversely, the fact that
> the activity consistently generates a profit may
> evidence an intent to produce a profit. However,
> § 13 permits imposition of tort liability only where
> the *primary* purpose is to produce a pecuniary
> profit. [Emphasis in original.]

As noted above, § 13 of the governmental tort
liability act provides that a proprietary function is
any activity that is conducted primarily for the
purpose of producing a pecuniary profit for the
governmental agency, but excluding any activity
normally supported by taxes or fees. The fact that
a governmental agency engages in an activity
despite consistent losses may be evidence that the
primary purpose of the activity is not to make a
pecuniary profit. *Hyde, supra.*

It is undisputed that Cobo Hall has never oper-
ated at a profit, and that, even with $5,350,000 per
year in development reimbursement funds from
the State of Michigan during fiscal 1987-88, the

city must still make up a deficit of $2,022,000 for the operating budget of Cobo Hall.

Because the expansion of Cobo Hall was an exercise of a governmental, rather than a proprietary, function, we believe that the trial court did not err in granting the city's motion for summary disposition and requiring Detroit Edison to bear the cost of relocating its equipment necessitated by Cobo Hall's expansion.

Because we find the governmental versus proprietary function issue to be dispositive, we need not address Edison's remaining issues.

Affirmed.

MURPHY, J., concurred in result only.