**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 31, 2006

CITY OF TAYLOR,

　　　Plaintiff-Appellee,

v                                                                      No. 127580

THE DETROIT EDISON COMPANY,

　　　Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

We granted leave to appeal in this case to reconcile plaintiff's constitutional authority to exercise "reasonable control" over its streets with the Michigan Public Service Commission's (MPSC) broad regulatory control over public utilities. Consistent with our longstanding precedent, we hold that a municipality's exercise of "reasonable control" over its streets cannot impinge on matters of statewide concern nor can a municipality regulate in a manner inconsistent with state law. In this case, the MPSC has promulgated uniform rules governing the relocation of utility wires underground. To the degree plaintiff's ordinance on this subject conflicts with the MPSC's rules, the ordinance exceeds plaintiff's power to

exercise "reasonable control" over its streets and is invalid. Furthermore, because the question of allocation of costs for the relocation of utility wires underground falls under the primary jurisdiction of the MPSC, that entity should be the first to consider this dispute. We reverse the judgment of the Court of Appeals and remand to the Wayne Circuit Court to enter an order granting summary disposition to defendant. The dismissal is without prejudice to plaintiff's right to seek a remedy before the MPSC.

FACTS AND PROCEDURAL HISTORY

In the fall of 1999, the City of Taylor (plaintiff) and the Michigan Department of Transportation planned for a major reconstruction project of a four-mile portion of Telegraph Road that intersects the city. The project called for major infrastructure improvements, including the underground relocation of all utility wires along Telegraph Road. Under the proposal, the Detroit Edison Company's (defendant) utility poles along Telegraph Road would be removed and their wires relocated underground. In early 2000, officials from plaintiff and defendant met several times to discuss the project and its implementation.

Defendant agreed to relocate the lines underground, but would not agree to bear the costs of that effort. When the parties' negotiations failed, plaintiff enacted Taylor Ordinance 00-344, the "Telegraph Road Improvement and Underground Relocation of Overhead Lines Ordinance." Section 3 of that ordinance requires all public utilities with lines or poles adjacent to Telegraph Road "to relocate underground all of their overhead lines and wires and remove all

2

poles and related overhead facilities equipment at their sole cost and expense and at no cost or expense to the City."[1]   After plaintiff enacted the ordinance, the parties continued to discuss the dispute, but could not come to an amicable resolution.  Ultimately, plaintiff agreed to advance the cost of relocating the wires underground, but reserved its rights to enforce the ordinance against defendant and seek reimbursement.

In June 2002, plaintiff filed a complaint for a declaratory judgment in circuit court, seeking a determination that defendant was obligated to pay the entire cost of relocating the wires under Taylor Ordinance 00-344.  Defendant moved for summary disposition under MCR 2.116(C)(4), arguing that the MPSC rules required plaintiff to pay for the relocation, and that the MPSC had primary jurisdiction over this dispute.  Plaintiff filed a cross-motion for summary disposition under MCR 2.116(C)(10), arguing that the ordinance controlled.  The circuit court granted summary disposition to plaintiff, holding that it was unnecessary to consider the issue of primary jurisdiction because the city's ordinance was enforceable regardless of the MPSC's interpretation of its rules.

On appeal, the Court of Appeals affirmed in part the judgment of the circuit court in a published opinion per curiam.[2]   The Court held that the MPSC did not have primary jurisdiction because the question was one of law, and the courts

---

[1] Taylor Ordinance 00-344.

[2] 263 Mich App 551; 689 NW2d 482 (2004).

3

could craft an answer that would promote uniformity without interfering with the MPSC's ability to perform its regulatory duties. Then, relying on its governmental function/proprietary function test, first articulated in *City of Pontiac v Consumers Power Co*,[3] the Court determined that plaintiff exercised a governmental function and properly required defendant to bear the entire cost of relocation. The Court also determined that state law did not preempt the city's ordinance.

This Court granted leave to appeal, specifically directing the parties to address the scope of a city's power over utilities under its constitutional authority to exercise reasonable control over its streets; whether that constitutional authority permits a city to impose relocation costs on utilities under Const 1963, art 7, § 29, and how the city's constitutionally authorized power to control its streets could be reconciled with the MPSC's broad regulatory authority over utilities.[4]

STANDARD OF REVIEW

This Court reviews the decision to grant or deny a motion for summary disposition de novo.[5] Issues of constitutional and statutory construction are questions of law that are also reviewed de novo.[6]

---

[3] 101 Mich App 450; 300 NW2d 594 (1980).

[4] 474 Mich 877 (2005).

[5] *Spiek v Dep't of Transportation*, 456 Mich 331; 572 NW2d 201 (1998).

[6] *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004).

4

ANALYSIS

The City's Constitutional Authority

Article 7 of the Constitution of 1963 enumerates the general authority and limits on the authority of local governments, such as counties, townships, cities, and villages.[7] Subject to authority specifically granted in the Constitution, local governments derive their authority from the Legislature.[8] We have held that

> "[local governments] have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant."[9]

Notwithstanding that local governments obtain their authority from the Legislature, the Constitution reserves to local governments certain authorities. In this case, plaintiff relies on the authority to exercise reasonable control over its streets, which is specifically reserved in art 7, § 29, which states:

> No person, partnership, association or corporation, public or private, operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local

---

[7] Const 1963, art 7.

[8] Const 1963, art 7, §§ 1, 17, and 21.

[9] *City of Kalamazoo v Titus*, 208 Mich 252, 262; 175 NW 480 (1919), quoting 1 Cooley, Constitutional Limitations (7th ed), pp 163, 264 *et seq.*

5

business therein without first obtaining a franchise from the township, city or village. *Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.*[10]

Thus, the authority reserved to local units of government to exercise reasonable control over the enumerated subject areas is explicitly made subject to the other provisions of the Constitution. One such provision is art 7, § 22, which empowers cities and villages "to adopt resolutions and ordinances *relating to its municipal concerns*, property and government, *subject to the constitution and law*."[11]

In *People v McGraw*,[12] this Court interpreted the similarly worded "reasonable control" predecessor of art 7, § 29 found in the 1908 Constitution,[13]

---

[10] Const 1963, art 7, § 29 (emphasis added).

[11] Const 1963, art 7, § 22 (emphasis added).

[12] 184 Mich 233; 150 NW 836 (1915), interpreting Const 1908, art 8, §§ 21 and 28.

[13] Const 1908, art 8, § 28 provided:

No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks, or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.

(continued…)

6

along with the predecessor of art 7, § 22, the provision regarding municipal powers.[14] *McGraw* involved traffic ordinances enacted by the City of Detroit that conflicted with the general state traffic laws. This Court held that "[t]aking the [constitutional] sections together, they should be so construed as to give the power to municipalities to pass such ordinances and regulations with reference to their highways and bridges as are not inconsistent with the general State law."[15] Thus, *McGraw* permits a city to exercise "reasonable control" to regulate matters of local concern, but only in a manner and to the degree that the regulation does not conflict with state law.

---

(…continued)

The differences between this section and Const 1963, art 7, § 29 are relatively minor. In addition to stylistic changes, counties are added to the list of municipalities; the list of items that public places can be used for now includes the general "other utility facilities"; and the reservation of power to municipalities is explicitly subject to other provisions of the Constitution.

[14] Const 1908, art 8, § 21 provided:

Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state.

The differences between this section and Const 1963, art 7, § 22 are also relatively minor. Besides the stylistic changes, the section merely reaffirms that a city's or a village's powers are subject to the general laws of the state.

[15] *McGraw, supra* at 238.

In 1939, the Legislature created the MPSC, giving it broad regulatory authority over public utilities. Under its enabling statute,

> [t]he public service commission is vested with *complete power and jurisdiction* to regulate all public utilities in the state except . . . as otherwise restricted by law. The public service commission is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and *all other matters* pertaining to the formation, operation, or direction of public utilities. The public service commission is further granted the power and jurisdiction to hear and pass upon *all matter pertaining to, necessary, or incident to the regulation of public utilities* . . . .[16]

In 1970, the MPSC promulgated rules governing the underground placement of new and existing utility wires.[17] Specifically, the MPSC promulgated Rule 460.516, governing the "[r]eplacement of existing overhead lines," and Rule 460.517, concerning "[u]nderground facilities for convenience of utilities or where required by ordinances."[18] These rules appear to cover the same subject matter as Taylor Ordinance 00-344, and in a manner that possibly creates a conflict between the MPSC's rules and the plaintiff's ordinance. Because the MPSC has not construed how its rules governing the allocation of costs for the underground relocation of utility wires apply in this circumstance, and because provisions of the ordinance appear to fall within the MPSC's regulatory purview, the MPSC, rather than a court, should assess whether there is an actual conflict.

---

[16] MCL 460.6 (emphasis added).

[17] 1999 AC, R 460.511 *et seq.*

[18] See titles of 1999 AC, R 460.516 and 460.517

As discussed later in this opinion, the doctrine of primary jurisdiction requires us to defer to the judgment of the MPSC on this question. If the ordinance conflicts with MPSC rules, then under art 7, §§ 22 and 29, and *McGraw*, Taylor Ordinance 00-344 must yield.

The cases from this Court relied on by the Court of Appeals and plaintiff are readily distinguishable from the present case. As an initial matter, *all* the cases from this Court holding that a municipality has the power to force a utility to relocate its facilities at its own expense were decided before the MPSC's promulgation of rules regarding the underground relocation of wires.[19] Thus, there was no state law for the municipal action to conflict with. To the extent these cases conflict with the MPSC's interpretation of its rules, however, they are abrogated. Moreover, no case cited is factually analogous. For example, the Court of Appeals cited this Court's opinion in *Detroit Edison Co v Detroit*[20] for the proposition that this Court "ruled that the city of Detroit could order the utility to move its poles at its own expense under the municipality's constitutional right to control public places."[21] In *Detroit Edison*, the utility erected poles on an easement granted to the city for public utilities. The utility claimed exclusive

---

[19] See *City of Monroe v Postal Tel Co*, 195 Mich 467; 162 NW 76 (1917), *Detroit Edison Co v Detroit*, 332 Mich 348; 51 NW2d 245 (1952), and *Detroit v Michigan Bell Tel Co*, 374 Mich 543; 132 NW2d 660 (1965).

[20] 332 Mich 348; 51 NW2d 245 (1952).

[21] 263 Mich App at 558, citing *Detroit Edison.*

9

control over the easement because the grantor dedicated it for utilities rather than public use. This Court held that the utility easement fell under the "public places" language of article 8, § 28 of the 1908 Constitution. However, the Court did not rely on that constitutional provision in holding that the city could require the utility to pay to move the poles. Rather, the Court relied on the utility's *concession* that it would be liable if the easement was determined to be a "public place."[22] Therefore, *Detroit Edison* does not support plaintiff's argument or the holding of the Court of Appeals.[23]

As noted, the precedent that governs the resolution of this case is *McGraw*. Because Taylor Ordinance 00-344 may conflict with MPSC rules, it may not be a valid exercise of plaintiff's reasonable control over its streets. Therefore, if the portion of the ordinance that requires the utility to bear the entire cost of relocation

---

[22] *Detroit Edison, supra* at 354-355. The dissent has created a doctrine of "perpetual concession" and would bind Edison to a concession it made 50 years ago in unrelated litigation. Merely stating the dissent's position shows why it has never had any basis in our jurisprudence.

[23] The case relied on by the dissent, *City of Monroe v Postal Tel Co*, *supra,* also does not support the Court of Appeals conclusion. *Monroe* involved a federal statute, the Post Road Act of 1886, which gave telegraph companies the right to construct telegraph lines along any United States post road. The issue before the Court was whether the federal statute limited the state's ability to exercise control over the lines. This Court determined, consistently with other jurisdictions, that the federal statute was permissive and subject to the states' police power. Not surprisingly, *Monroe* did not mention or utilize Const 1908, art 8, § 28 or *McGraw* in its resolution of the case.

conflicts with the MPSC rules on the subject, that portion of the ordinance is invalid. We reverse the Court of Appeals judgment that held to the contrary.

## The Court Of Appeals Test

In reaching its holding, the Court of Appeals did not focus on the question of "reasonable control." Instead, the Court of Appeals relied on a "general rule that relocation costs may be imposed on the utility if necessitated by the municipality's discharge of a governmental function, while the expenses must be borne by the municipality if necessitated by its discharge of a proprietary function."[24] This "general rule" appears to emanate from *City of Pontiac v Consumers Power Co*,[25] and is derived from McQuillin, Municipal Corporations, § 34.74(a), p 184. While many Michigan Court of Appeals cases have applied the "general rule," [26] there is no support for it in either our statutes or Constitution. The proper "general rule," which has been inexplicably ignored by the Court of Appeals, was articulated by this Court in *McGraw* nearly 100 years ago. Today, we reaffirm the holding and standard articulated in *McGraw* as being consistent with the modern constitutional provisions of the analogues of these provisions it

---

[24] 263 Mich App at 557-558.

[25] 101 Mich App 450; 300 NW2d 594 (1980).

[26] *Pontiac, supra* at 453-454, was cited in *Detroit Edison Co v Detroit*, 180 Mich App 145; 446 NW2d 615 (1989) (expansion of Cobo Hall), and *Detroit Edison Co v Southeastern Michigan Transportation Auth,* 161 Mich App 28; 410 NW2d 295 (1987) (public transit system); see also *Michigan Bell Tel Co v Detroit*, 106 Mich App 690; 308 NW2d 608 (1981) (sewer treatment facility).

11

construed: A municipality may regulate "highways, streets, alleys, and public places" to the degree such regulations are consistent with state law. We overrule the Court of Appeals cases that apply the proprietary function/governmental function test in this area of the law.[27]

Primary Jurisdiction

Having decided that plaintiff's effort to compel defendant's compliance by decree may contravene the authority of the MPSC, we next address whether the MPSC has primary jurisdiction over the dispute about the allocation of the costs of relocating the wires underground.[28] There is no fixed formula, but there are several factors to consider in determining whether an administrative agency has primary jurisdiction over a dispute: (1) whether the matter falls within the agency's specialized knowledge, (2) whether the court would interfere with the uniform resolution of similar issues, and (3) whether the court would upset the regulatory scheme of the agency.[29] The Court of Appeals analyzed these three

---

[27] See n 26, *supra*.

[28] The dissent discusses preemption at length. We cannot discern why. Our opinion does not mention preemption, much less rely on the doctrine, and it plays no role in our disposition of this case.

[29] *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 198-200; 631 NW2d 733 (2001); see also *Rinaldo's Constr Co v Michigan Bell Tel Co*, 454 Mich 65, 71-72; 559 NW2d 647 (1997).

factors and determined that the MPSC did not have primary jurisdiction over the dispute. We disagree.

The fundamental error in the Court of Appeals analysis is that the court applied the *Travelers* factors to the question of the city's constitutional authority to exercise reasonable control over its streets. We agree that the MPSC has absolutely no jurisdiction to consider the scope of plaintiff's constitutional authority under art 7, § 29.[30] As discussed earlier in this opinion, *McGraw* articulates the proper standard for resolution of the constitutional issue. Once the constitutional issue has been resolved, the *Travelers* factors are applied to determine whether the MPSC has primary jurisdiction over the issue of how to allocate the costs of relocating the lines underground.

Applying the first factor, the appropriate method for allocating the cost of moving the facilities of utilities is clearly within the expertise of the MPSC. Additionally, the MPSC is in the best position to interpret and apply its own rules on this subject. Regarding the second factor, the MPSC arguably has devised a uniform system for removing overhead lines and allocating the associated costs. Because the expense incurred in complying with plaintiff's demands may potentially affect a wide range of ratepayers, most of whom do not reside in the

---

[30] As stated in *Wikman v City of Novi*, 413 Mich 617, 646-647; 322 NW2d 103 (1982), "Generally speaking, an agency exercising quasi-judicial power does not undertake the determination of constitutional questions or possess the power to hold statutes unconstitutional."

City of Taylor, this is an area of law where uniformity is critical. Finally, under the third factor, the decision of the City of Taylor appears directly to implicate the rate-making authority of the MPSC and defendant's tariffs created under that authority. Given the MPSC's broad authority to regulate public utilities, and its promulgation of rules pertaining to the relocation of overhead lines underground, the circuit court's resolution of this case could adversely affect the MPSC's ability to carry out its regulatory responsibilities. Because application of the *Travelers* factors overwhelmingly favors the MPSC, that agency has primary jurisdiction to determine the proper allocation of costs associated with relocating the wires underground. Accordingly, the circuit court should have granted defendant's motion to dismiss and required plaintiff to seek a remedy from the MPSC.

Conclusion

Today, we reaffirm this Court's decision in *McGraw*. Under Const 1963, art 7, §§ 22 and 29, a local unit of government may exercise reasonable control over its "highways, streets, alleys, and public places" as long as that regulation does not conflict with state law. Here, because plaintiff's ordinance may be incongruent with the MPSC's regulations governing underground relocation of wires, and the regulation of defendant utility, the ordinance may be invalid. MCL 460.6 vests the MPSC with broad authority to regulate public utilities, and the MPSC has promulgated rules on this subject. Accordingly, we conclude that the MPSC has primary jurisdiction over the issue of cost allocation.

We reverse the judgment of the Court of Appeals and remand to the Wayne Circuit Court to grant summary disposition to defendant. Plaintiff may seek a remedy concerning the costs of relocating defendant's wires underground from the MPSC.

> Robert P. Young, Jr.
> Clifford W. Taylor
> Elizabeth A. Weaver
> Maura D. Corrigan
> Stephen J. Markman

Cavanagh, J., concurred in the result only.

> Michael J. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

CITY OF TAYLOR,

      Plaintiff-Appellee,

V                                       No.  127580

THE DETROIT EDISON COMPANY,

      Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

Today, the majority of this Court has made a drastic change in the law.  I believe the legal conclusions underlying the change are erroneous.

The Michigan Constitution provides local units of government the authority to reasonably control their rights-of-way.  Const 1963, art 7, § 29.  Michigan courts have long held that the right of reasonable control includes the right to order a utility to move its facilities to another location at the utility's expense.  The state has not occupied the field in this area of the law.  And the primary jurisdiction of the Michigan Public Service Commission (PSC) is not implicated in it.  Therefore, the Court of Appeals was correct in remanding the case to the circuit court, and I would affirm its decision.

ESSENTIAL FACTS AND PROCEDURAL HISTORY

This case involves a large reconstruction project on Telegraph Road, also known as M-24, in the city of Taylor.  Telegraph is a major thoroughfare in the

city. About 70,000 vehicles travel on its four-mile stretch each day. Plaintiff city of Taylor indicates that Telegraph is the most heavily congested business district in the city. Hundreds of traffic accidents occur there each year, and some involve collisions with utility poles. Defendant Detroit Edison's utility poles run along Telegraph within Taylor's right-of-way. Edison's facilities were placed in the right-of-way pursuant to a franchise agreement that made clear that Taylor did not surrender its control over any streets, highways, or public places.

In 1999, Taylor began work in cooperation with the Michigan Department of Transportation on the Telegraph reconstruction project. It involved a massive overhaul of the right-of-way, calling for new pavement, new sidewalks, new water mains, new street lights, and new conduit for median irrigation and utilities. A significant part of the plan involved the relocation of Edison's facilities below ground.

The parties disagreed about who was responsible to pay for the relocation, and after negotiations failed, the Taylor City Council passed Taylor Ordinance 00-344. It directed all persons owning, leasing, operating, or maintaining overhead lines, wires, poles, or facilities to relocate them underground and to remove all aboveground facilities. The work was specified to be done at the expense of the persons owning, leasing, operating, or maintaining the overhead facilities.

The ordinance listed several reasons why relocation was required. It enhanced public safety by preventing falling and downed poles and wires, by eliminating vehicle collisions with the facilities, and by enhancing drivers'

2

visibility and sightlines. The ordinance stated that underground lines would operate more reliably than overhead lines. Finally, it pointed out that the removal of poles and overhead lines would improve aesthetics and facilitate the future development of the city.

Edison objected to the ordinance and refused to relocate its facilities at its own expense. Taylor advanced a portion of the cost of relocation so that the project could progress, but reserved the right to litigate to recover its expenditures. When, in time, it sued Edison to enforce the ordinance, both parties sought summary disposition. The trial court granted Taylor's motion, denied Edison's motion, and ordered Edison to reimburse Taylor.

Edison appealed in the Court of Appeals, which affirmed the ruling. It remanded the case on a subissue regarding the sufficiency of some of the conduit that Taylor had installed. *City of Taylor v Detroit Edison Co*, 263 Mich App 551; 689 NW2d 482 (2004). This Court subsequently granted leave to appeal and heard oral argument. 474 Mich 877 (2005).

REASONABLE CONTROL OF THE RIGHT-OF-WAY

The Michigan Constitution provides at article 7, section 29:

> No person, partnership, association or corporation, public or private, operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local business therein without first obtaining a franchise from the township, city or village. Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to

3

the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.

Conducting private business on public streets is not a right. "'The use of public streets for private enterprise may be for the public good, but, even so, it is a privilege that may be granted, regulated, or withheld.'" *Red Star Motor Drivers' Ass'n v Detroit*, 234 Mich 398, 409; 208 NW 602 (1926), quoting *Schultz v City of Duluth*, 163 Minn 65, 68; 203 NW 449 (1925). In fact, this Court has stated that such use of the right-of-way is special and extraordinary because it differs radically from the ordinary use of streets, which is for travel. *Fostini v Grand Rapids*, 348 Mich 36, 40-41; 81 NW2d 393 (1957), quoting 64 CJS, Municipal Corporations, § 1774, pp 224-225. The right to deny or limit the use of streets reposes in the local unit of government. If the municipality decides to grant permission to use the streets, it may do so under such terms and conditions as it sees fit. *Fostini, supra* at 41. The only limitation on the municipality is that its control be reasonable. Const 1963, art 7, § 29.

Through the last century, Michigan courts uniformly applied this rule to utilities. Our appellate courts consistently held that a municipality may require a utility to relocate its poles and facilities at the utility's own expense. In fact, Edison has repeatedly been the subject of these cases. Its struggle against the constitutionally protected right of reasonable control has been unsuccessful until now.

4

By way of illustration, nearly 90 years ago, this Court dealt with a remarkably similar case, *City of Monroe v Postal Tel Co*, 195 Mich 467; 162 NW 76 (1917). There, the city of Monroe issued an ordinance requiring various utilities to relocate their lines and facilities underground at their own expense. This Court stated that a utility's use of the right-of-way cannot "'incommode the public in its use.'" *Id*. at 472 (citation omitted). The Court further stated that the cost of relocation cannot be a deciding factor in whether the control of the right-of-way is reasonable. We wrote:

> "The mere fact that the route designated by the municipality is less convenient or involves on the part of the telephone company a larger expenditure is of no consequence so long as the company is not thereby prevented from reaching all those it desires to serve or who desire service from it. The record before us fails to disclose this condition. Where a municipality, in the exercise of its inherent police power, adopts an ordinance reasonably regulating the manner, character, or place of construction of a contemplated line, the telephone company must comply with such regulations and exercise its right of entry under the general powers conferred by the State subject to them." [*Id*. at 473-474, quoting *Village of Jonesville v Southern Michigan Tel Co*, 155 Mich 86, 90; 118 NW 736 (1908).]

In 1952, this Court followed in the footsteps of the *Monroe* case. The city of Detroit sought to install and expand its public sewer system in an area where Edison had installed its facilities. *Detroit Edison Co v Detroit*, 332 Mich 348, 349-350; 51 NW2d 245 (1952). We held that the designated area was equivalent to those dedicated to the city for streets or alleys. *Id*. at 354. That being the case, we concluded, Edison must bear the cost of removing and replacing its facilities

5

located there pursuant to Const 1908, art 8, § 28.[1]  Edison conceded as much. Both it and the majority have failed to explain why Edison should not be bound in this case by its earlier concession.  In fact, the majority uses this concession as a reason to distinguish *Detroit Edison Co* from this case.  Given that Edison made this concession in a case involving similar facts, I see no reason why it should not be bound by its clearly stated former position.

In 1965, this Court again addressed an issue involving the relocation of utility facilities.  The city of Detroit vacated previously dedicated streets and alleys as part of an urban redevelopment plan for a blighted area.  *Detroit v Michigan Bell Tel Co*, 374 Mich 543, 548; 132 NW2d 660 (1965).  Both the Michigan Bell Telephone Company and Edison sought reimbursement from the city for the relocation of their lines and facilities.  *Id*. at 549-550.  Detroit's plan called for the utilities to relocate facilities both aboveground and underground.  *Id*. at 557.  Again, this Court stated that the city had a legal right to require the utilities to relocate their facilities at their own expense.  As in the *Monroe* case, we made no distinction between relocation aboveground and relocation underground.

The Court of Appeals picked up the baton after being asked repeatedly to address the question of relocating utility lines.  It has consistently found that the utility must bear the cost of relocation as long as the relocation is required in the course of the discharge of a governmental function.  See *City of Pontiac v*

---

[1] This was the predecessor to Const 1963, art 7, § 29.

6

*Consumers Power Co*, 101 Mich App 450; 300 NW2d 594 (1980), *Detroit Edison Co v Southeastern Michigan Transportation Auth*, 161 Mich App 28; 410 NW2d 295 (1987), *Detroit Edison Co v Detroit*, 180 Mich App 145; 446 NW2d 615 (1989), *Detroit Edison Co v Detroit*, 208 Mich App 26; 527 NW2d 9 (1994), and *City of Taylor,* 263 Mich App 551.[2]

This long line of cases discussing reasonable control under Const 1963, art 7, § 29 is supported by the common law. And the control exercised by Taylor here is also in accord with the common law.

> Under the traditional common-law rule, utilities have been required to bear the entire cost of relocating from a public right-of-way whenever requested to do so by state or local authorities. 12 E. McQuillin, Law of Municipal Corporations § 34.74a (3d ed. 1970); 4A J. Sackman, Nichols' Law of Eminent Domain § 15.22 (rev. 3d ed. 1981). This rule was recognized and approved by this Court as long ago as *New Orleans Gas Light Co. v. Drainage Comm'n of New Orleans*, 197 U.S. 453, 462 (1905) (holding that the injury sustained by the utility is *damnum absque injuria*[3]). [*Norfolk Redevelopment & Housing Auth v Chesapeake & Potomac Tel Co*, 464 US 30, 35; 104 S Ct 304; 78 L Ed 2d 29 (1983).]

---

[2] The majority contends that this line of cases from the Court of Appeals applying the governmental function test is inconsistent with the "reasonable control" standard. I disagree. I believe that the cases articulate a further test created by the Court of Appeals to assure that governmental units act reasonably. Therefore, the holdings are supported by both our case law and the Michigan Constitution. The majority errs in overruling this helpful line of cases. Contrary to the majority's statements, the Court of Appeals did not ignore the "proper 'general rule'" expressed in *People v McGraw*, 184 Mich 233; 150 NW 836 (1915). *Ante* at 11. Instead, it dutifully followed the common law, which has not been repudiated in this state.

[3] Loss or harm for which there is no legal remedy. Black's Law Dictionary (7th ed).

Far from abandoning the common law, this state's constitution specifically retains it. Const 1963, art 3, § 7; *Stout v Keyes*, 2 Doug 184, 188-189 (Mich, 1845). Nothing in article 7, § 29 of the Michigan Constitution is inconsistent with the common law in this area. Instead, as shown earlier in this opinion, this Court has underlined the consistency in repeatedly requiring utilities to bear the cost of relocation. Therefore, the common law remains in this state.[4] Under its general rule, the Taylor ordinance represents a reasonable control of the city's right-of-way.[5] Given that the control is reasonable, it is constitutionally protected by Const 1963, art 7, § 29, and the Court of Appeals decision should be affirmed.

The majority relies on *People v McGraw*, 184 Mich 233; 150 NW 836 (1915). In *McGraw*, the Court stated, "Taking the sections [of the Constitution] together, they should be so construed as to give the power to municipalities to pass

---

[4] The Legislature has the authority to abrogate the common law. *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 507-508; 309 NW2d 163 (1981). But, when it does so, it must speak in clear terms. *Marquis v Hartford Accident & Indemnity* (*After Remand*), 444 Mich 638, 652 n 17; 513 NW2d 799 (1994), quoting *Bandfield v Bandfield*, 117 Mich 80, 82; 75 NW 287 (1898). I find no action by the Legislature speaking in clear terms that abrogate the common law on this subject.

[5] The ordinance is reasonable also because it is directed at remediating an interference with the primary use of the right-of-way, travel. If, at any time, the presence of a utility becomes a burden on the public's right to travel, the utility's franchise must give way. *Postal Tel Co*, 195 Mich 472. In this case, the ordinance was directed at the fact that Edison's poles and facilities blocked sightlines and led to vehicular collisions. This interference with the primary use of the rights-of-way allowed Taylor to require relocation at Edison's expense as a reasonable exercise of its police powers and control of its right-of-way. *Id*.

such ordinances and regulations with reference to their highways and bridges as are not inconsistent with the general State law." *Id*. at 238. The majority treats this general statement of the law as if it overrides all other precedent in the area, even precedent directly on point.[6] This is inaccurate. Moreover, it is inconsistent with *McGraw*.

As noted earlier, the common law remains viable law in this state. *Stout*, 2 Doug 188-189. Under the common law, "utilities have been required to bear the entire cost of relocating from a public right-of-way whenever requested to do so by state or local authorities." *Norfolk Redevelopment & Housing Auth*, 464 US 35. In creating the PSC, the Legislature did not explicitly overrule the common law. To the contrary, the PSC's jurisdiction is limited "as otherwise restricted by law." MCL 460.6(1). The common law of the state is part of that restricting law. Therefore, unless the common law is expressly overruled, it controls, even with respect to the jurisdiction of the PSC.

Applying this to the case at hand, *McGraw* did not change the common-law rule that a municipality may require a utility to bear the cost of relocating its facilities. The Supreme Court and the Court of Appeals have consistently followed this rule. In continuing in this case its adherence to the common law, the Court of Appeals did not err, and its decision should be affirmed.

---

[6] *McGraw* dealt with local traffic ordinances, not the relocation of utility facilities. *McGraw*, 184 Mich 234-235.

9

THE ORDINANCE IS NOT PREEMPTED

Instead of properly respecting Taylor's constitutional right to reasonably control its rights-of-way, the majority focuses its attention on the jurisdiction of the PSC. Given my analysis of the law, I conclude that this focus is misplaced. But I will address it in order to fully demonstrate that the majority has reached an incorrect legal conclusion.[7]

> A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation. [*People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977).]

In determining whether the state preempted the field, this Court weighs certain considerations: (1) whether state law stipulates that it is exclusive, (2) whether legislative history implies that it is preempted, (3) whether the pervasiveness of the statutory scheme supports preemption,[8] and (4) whether the nature of the subject matter demands exclusive state regulation to achieve the uniformity. *Id*. at 322-324. Regarding the fourth factor, this Court provided:

> As to this last point, examination of relevant Michigan cases indicates that where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation

---

[7] The majority states that it cannot discern why I address preemption. I do so because it was raised by the appellant and addressed by the Court of Appeals. Therefore it is an important part of the discussion of this case.

[8] This factor alone will not be sufficient to find preemption.

does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld. [*Id*. at 324-325.]

Under the first factor, the PSC's jurisdiction is not exclusive. Instead, its jurisdiction is limited "as otherwise restricted by law." MCL 460.6(1). Edison directs our attention to nothing in the legislative history implying preemption. Therefore, the second *Llewellyn* factor also fails to support preemption.

Nor does the third factor favor preemption. The PSC's regulations are not so pervasive that they cover the entire area or field of relocating power lines. This Court has specifically stated that the PSC has no interest in the development and control of a city's right-of-way. Rather, it must be left to the individual municipality:

> The commission is not interested—nor should it be—in the effect which the construction will have on the development of the communities through which it passes. If its determination were to be binding upon local units of government, the absence of public hearings and notification to affected municipalities would suggest due process shortcomings. [*Detroit Edison Co v City of Wixom*, 382 Mich 673, 682; 172 NW2d 382 (1969) (opinion by Brennan, C.J.), citing *Gust v Canton Twp*, 342 Mich 436; 70 NW2d 772 (1955).]

This Court has also ruled that the cost-conscious nature of the PSC is incompatible with the PSC preempting a municipality's right to control its rights-of-way:

> But a city does have an interest in the location and route of a high tension electric power line. It is a specific land use which is not compatible with other land uses. It is a land use which characterizes the neighborhood and influences the development of adjacent real estate.

11

> The public service commission statute does not vest the commission with authority to determine the routes of high tension lines except as those routes bear upon "rates, fares, fees, charges, services, rules, conditions of service" or the "formation, operation or direction of such public utilities." CLS 1961, § 460.1 *et seq*. (Stat Ann 1965 Cum Supp § 22.13[1] *et seq*.). The first sentence of CLS 1961, § 460.6 (Stat Ann 1965 Cum Supp § 22.13[6]), vests the commission "with complete power and jurisdiction to regulate all public utilities in the state * * * except as otherwise restricted by law."
>
> The commission is not empowered to assume the role of arbiter between the utility and the city. The company's cost-conscious approach to route selection and the commission's rate-and-service-conscious evaluation of the selected route are too closely aligned. [*Detroit Edison Co*, 382 Mich 682-683 (opinion by Brennan, C.J.).]

Aside from the Court's reasoning in these cases, the PSC's own rules contemplate no preemption in this area of the law. Instead, they anticipate that municipalities will pass ordinances intended to control their rights-of-way. 1999 AC, R 460.517 provides: "The utility shall bear the cost of construction where electric facilities are placed underground at the option of the utility for its own convenience or *where underground construction is required by ordinance* in heavily congested business districts." (Emphasis added.)

This rule specifically contemplates that municipalities will pass ordinances on the subject. And it specifically states that these ordinances control. Edison cannot plausibly argue that the Taylor ordinance is preempted by a state regulatory scheme when the scheme specifically allows for such an ordinance. Because the state regulatory scheme contemplates and allows regulation by municipalities, it does not preempt the field.

12

Finally, the nature of the subject matter does not require exclusive state regulation for the purpose of achieving uniformity throughout Michigan. A city has an interest in the location and route of power lines because their location involves a use of land that is not compatible with other land uses. Conversely, the PSC is not interested in the effect that the construction will have on cities' rights-of-way. *Detroit Edison Co,* 382 Mich 682-683 (opinion by Brennan, C.J.).

The courts can and have provided uniformity in this area of the law. The common law states that utilities must pay for relocating their facilities. Michigan courts have consistently upheld this rule. Only this Court in this case has failed to follow it. It is this decision that now creates confusion. Municipalities will be less sure when they may exercise their constitutional right to control their rights-of-way. And it is now unclear whether the common law in this area is abrogated in all situations or just in some situations.

This confusion is without legal justification. None of the *Llewellyn* factors favors preemption by the PSC. Past incarnations of this Court and the Court of Appeals have understood this point. As a result, a consistent rule of law has been created regarding the relocation of utility lines. Unlike the majority of this Court, I would leave this rule of law unmolested.

THE PRIMARY JURISDICTION OF THE PSC IS NOT IMPLICATED

> Adhering to the doctrine of primary jurisdiction reinforces the expertise of the agency to which the courts are deferring the matter, and avoids the expenditure of judicial resources for issues that can better be resolved by the agency. "A question of 'primary jurisdiction' arises when a claim may be cognizable in a court but

13

initial resolution of issues within the special competence of an administrative agency is required." [*Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 197; 631 NW2d 733 (2001) (citation omitted).]

No fixed formula exists for determining when primary jurisdiction applies. But three major considerations have been identified: (1) whether the agency's specialized expertise makes it a preferable forum, (2) whether there is a need for uniformity in the resolution of the issue, and (3) whether a judicial determination of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities. *Rinaldo's Constr Corp v Michigan Bell Tel Co*, 454 Mich 65, 71; 559 NW2d 647 (1997), quoting 2 Davis & Pierce, Administrative Law (3d ed), § 14.1, p 272. Application of these considerations does not support a finding that primary jurisdiction in this case rests with the PSC.

The issue here is whether Taylor is exercising reasonable control over its streets and rights-of-way.[9] The PSC is not equipped to deal with that issue. *Detroit Edison Co*, 382 Mich 682-683 (opinion by Brennan, C.J.). It does not involve rate structures. Instead, it is a legal question regarding interpretation and application of a constitutional provision. It is a question of law best left to the expertise of the courts, not an administrative agency.

---

[9] The majority implies that this is just a preliminary matter controlled by *McGraw*. In reality, this is the entire focus of the case. And it goes beyond the mere application of *McGraw*. In ruling on it, the lower courts were bound to follow the common law and the precedent of this Court that is directly on point.

14

Defendant argues, and the majority seems to agree, that the issue in this case should be resolved by the PSC because Edison's rates may be adversely affected. Essentially, Edison's fear is that many communities may require that lines be placed underground at the utility's expense once Taylor has done so. It asserts that this might cost Edison hundreds of millions of dollars. If so, it argues, this will require it to raise its rates. Because the PSC is the body that deals with raising rates, Edison reasons that this case should go to the PSC.

I question this logic. The PSC cannot be asked to control all that may ultimately affect utility rates. Otherwise, it would have original jurisdiction over everything from environmental regulations to the wages paid to utility employees.

By extension, Edison's reasoning would be as follows: employees' wages cost Edison a significant sum of money. This cost is passed on to consumers. When wages rise, utility rates rise. Therefore, the PSC should handle all cases involving utility employees' wages because it is the only body that can deal with setting rates. It follows that the PSC could set the maximum wage that Edison pays its employees at $1 an hour in order to lower costs to the customers. I find it disheartening that the majority has allowed itself to be distracted by this argument from the real issue presented.

Next, the need for uniformity does not support primary jurisdiction in the PSC. In fact, before today, a single rule of law applied in all cases involving the relocation of utility facilities. Both the common law and the precedent from this Court held that a municipality could require a utility to move its facilities at the

15

utility's own expense. For nearly the last century, this rule of law had been uniformly applied. The PSC was neither threatened nor destroyed. Given that uniformity can and has been achieved, there is no need now to defer to the PSC.[10]

Finally, a judicial determination will not have an adverse effect on the PSC's performance of its regulatory responsibilities. The ordinance in this case does not conflict with the PSC's regulatory scheme. The PSC's own rules contemplate that a municipality will enact an ordinance when it decides that a utility's facilities must be relocated. The municipality is empowered to require the utility to pay for the relocation. Given that the PSC's rules allow for this, no negative effect on the regulatory responsibilities should be assumed.

The majority apparently draws a distinction between this case and other precedents because the lines are to be moved underground. The common law makes no such distinction. Nor did this Court previously draw such a distinction. Instead, at least from 1917 forward, this Court treated underground replacement the same as any other replacement. *Postal Tel Co*, 195 Mich 472. To create this distinction requires a change in existing law.

The rule governing moving a utility's poles and structures that are situated within a right-of-way should be retained. Under a consistent application of this

---

[10] Under this factor, the majority points to the "uniform system for removing overhead lines . . . ." *Ante* at 13. As noted above, the PSC's own rules contemplate municipal ordinances on this subject. Moreover, the ordinances are controlling. 1999 AC, R 460.517. Therefore, this "uniformity" does not weigh in favor of disallowing these ordinances under the guise of primary jurisdiction.

16

rule, the PSC's regulatory responsibilities are as unaffected now as they were when all the other cases that I have discussed were decided.

Everything considered, this case presents a question that the PSC is ill-equipped to handle. The PSC has no expertise in dealing with or applying constitutional provisions. Therefore, deferring to its primary jurisdiction is both unwise and unnecessary.

CONCLUSION

The Michigan Constitution, Const 1963, art 7, § 29, provides local units of government the right to reasonable control over their rights-of-way. Michigan courts have long held that this includes the right to order a utility to relocate its facilities to another location at the utility's expense. Therefore, Taylor was justified in passing an ordinance requiring Edison to relocate its facilities underground and pay for the relocation itself.

This is a well-developed area of law. The state has not occupied the field, and the primary jurisdiction of the PSC is not implicated. Quite simply, there is no need for the sea change that the majority of this Court makes in the law today. The judgment of the Court of Appeals should be affirmed.

Marilyn Kelly

17